### In re BEL AIR ASSOCIATES, LTD., Debtor.

**Bankruptcy No. BK–80–00151.**

United States Bankruptcy Court, W. D. Oklahoma.

May 2, 1980.

G. Blaine Schwabe, III, Oklahoma City, Okl., for bankrupt, Bel Air Associates, Ltd.

James F. Hartmann, Jr., Oklahoma City, Okl., for general partner, Leo R. Frey.

Murray Cohen, Oklahoma City, Okl., for creditors, P.M. & M. Co. and Leroy Properties Development Corp.

Robert W. Amis, Oklahoma City, Okl., for limited partner, Andrew H. Tompkins.

## OPINION OF THE COURT

ROBERT L. BERRY, Bankruptcy Judge.

### Statement of the Case

On January 29, 1980, Mr. Leo R. Frey, General Partner of Bel Air Associates, Ltd., a limited partnership, filed a Voluntary Petition in this Court on behalf of the said partnership. This petition was filed pursuant to Chapter 11 of Title 11, United States Code. On February 22, 1980, Debtor filed a Plan of Reorganization. On that date Debtor also filed an "Application for Order Authorizing Advertising, Authorizing Incurrence of Debt, Approving Disclosure Statement, Fixing Date for Filing Claims, Confirming Plan, Authorizing Sale of Property, and Providing for Notice Thereof." On February 22, 1980, this Court entered an "Order Authorizing Advertising, Authorizing Incurrence of Debt, Approving Disclosure Statement, Fixing Date for Filing Claims, Fixing Date for Hearing on Confirmation and Sale of Property, and Providing for Notice Thereof."

On March 3, 1980, Plaintiff Andrew H. Tompkins, "Tompkins", a limited partner of the partnership, filed by his attorney a Motion to vacate the Court's Order of February 22, 1980. On March 10, 1980, the Court overruled the said Motion.

On March 17, 1980, Plaintiff filed a pleading rejecting the plan of reorganization. This pleading contained objections to the plan, objections to claims, objections to the authorization to incur debts, and objections to confirmation of the plan. It also contained applications for the appointment of a trustee, examiner and creditor's committee. After a hearing on the matter on March 24, this Court overruled Plaintiff's rejections, objections and applications by formal order.

*Findings*

Due to the complex nature of this case and the large number of various objections and applications having been filed, this Court will treat each of these matters separately.

### I.

### Knowledge and Consent by Limited Partners

■ Tompkins claimed that this Court lacked jurisdiction because the petition did not reflect an appropriate authorization by the members of their partnership.

Rule 105 of the Rules of Bankruptcy Procedure states in pertinent part:

"(a) Voluntary Petition. A voluntary petition may be filed by all the *general partners* on behalf of the partnership." (Emphasis added)

The Limited Partnership involved here consists of one general partner and three limited partners. The petition was duly filed by the one and only general partner thus complying with Rule 105. See also 54 O.S. §§ 231, 232.

■ Tompkins also claimed that the petition was filed without his knowledge or consent thereby violating Oklahoma's Uniform Limited Partnership Act.

The Oklahoma Uniform Limited Partnership Act is contained in 54 O.S. § 141 et seq. This Court assumes that Tompkins bases his claim on the provisions of 54 O.S. § 150 which states in pertinent part:

"(a) A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:

"(1) Do any act in contravention of the certificate.

"(2) Do any act which would make it impossible to carry on the ordinary business of the partnership.

"(3) Confess a judgment against the partnership."

Section 16 of the Partnership Agreement, however, provides in part:

"16.01. The Limited Partnership shall commence on December 27, 1973, the effective date hereof, and shall continue until December 31, 1998, unless dissolved earlier by any of the following events:

"(i) Dissolution of the Limited Partnership by operation of law or final judgment or decree of a court of competent jurisdiction;

"(ii) Dissolution upon sale of the Apartments prior to December 31, 1998;

"(iii) Dissolution by election of the General Partner, if, *in the reasonable discretion of the General Partner*, continued ownership of the Apartments would be unprofitable." (Emphasis added)

Thus, the partnership agreement itself, duly signed by Tompkins provides for dissolution of the partnership at the sole discretion of the General Partner. But even if this were not the case, there is adequate legal basis for the proposition that a petition in bankruptcy need not be approved by the Limited Partners.

Oklahoma's Uniform Partnership Act is contained in 54 O.S. §§ 201 et seq. 54 O.S. § 206(2) provides that ". . . this Act shall apply to limited partnerships except insofar as the statutes relating to such partnerships are inconsistent herewith."

Section 232 provides that "(o)n application by or for a partner the court shall decree a dissolution whenever . . . (t)he business of the partnership can only be carried on at a loss." Section 231 states that "(d)issolution is caused . . . (i)n contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any other provisions of this section, by the express will of any partner at any time." Section 231 also provides that dissolution is caused by the bankruptcy of the partnership. Further, section 237 states that any partner,

upon cause shown, may obtain winding up by the court.

## II.

### Appointment of Trustee or Examiner

█ Tompkins raised the fact that there were actions pending in the Oklahoma District Court wherein Tompkins had alleged fraud on the part of the general partner. Tompkins made an oral motion at the hearing on March 24th to appoint a trustee or examiner under provisions of 11 U.S.C. § 1104, said motion being predicated on Tompkins allegations of fraud. 11 U.S.C. § 1104 provides in pertinent part:

"(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

"(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

"(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

"(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

"(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

"(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000."

Under 11 U.S.C. § 1104 Tompkins was entitled to the appointment of a trustee upon a showing of fraud, dishonesty or gross mismanagement on the part of the general partner, or, in the alternative, a showing that such an appointment would be in the interests of creditors, equity security holders and other interests of the estate. Plaintiff is an equity security holder as defined by 11 U.S.C. § 101(15)(B).

The voluntary petition filed herein lists two creditors in the Schedule A–2, Creditors Holding Security, attached thereto, who subsequently filed Proofs of Claims. One of these creditors is named as "Leroy Properties and Development Corporation" and accounts for approximately twenty-two percent of the secured claims of $2,333,-871.55. Leroy is a public corporation in which the general partner herein owns a majority interest.

In Schedule A–3, Creditors Holding Unsecured Claims Without Priority, of the voluntary petition, the sole creditor listed is "P.M. &M. Company" with a filed Proof of Claim of $934,314.24. P. M. & M. is a wholly owned subsidiary of Leroy.

In his motion of March 3, Tompkins stated that in the pending Oklahoma District Court cases he alleged "self-dealing and a breach of the general partner's fiduciary duty" owed to Tompkins. In the Limited Partnership Agreement, however, it is plainly stated in Section 5 therein:

"5.01. The business of the Limited Partnership shall be to acquire for investment purposes the Bel Air Apartments (hereinafter "the apartments"), situated at Southwest 74th Street and Santa Fe Boulevard, Oklahoma City, Oklahoma.

"5.02. To acquire the Apartments, the General Partner may execute for the

Limited Partnership an Agreement for Purchase of Real Property substantially in the form of Exhibit A attached hereto and incorporated herein by reference (the "Purchase Agreement") and may also execute any and all other documents or instruments necessary or appropriate in connection with the transactions contemplated in said Purchase Agreement. *Each of the undersigned Limited Partners has been advised and is aware that Leo Frey is the President and a major stockholder of LeRoy Corporation, the Seller named in the Purchase Agreement. The Limited Partners' agreement herein that such Purchase Agreement shall be executed is made with full knowledge of the above-mentioned facts,* and the Limited Partners further agree that upon execution of the Purchase Agreement by the General Partner, said Purchase Agreement shall be a valid and binding obligation of the Limited Partnership." (Emphasis added)

In addition, Section 12 of the Limited Partnership Agreement provides:

"Concurrently with the execution of the Purchase Agreement, the General Partner shall execute for the Limited Partnership a Management with P. M. & M. Company, an Oklahoma corporation, substantially in the form of Exhibit B attached hereto and incorporated herein by reference (hereinafter the "Management Agreement"). *Each of the undersigned Limited Partners has been advised and is aware that Leo Frey is the President and a major stockholder of LeRoy Corporation and that P. M. & M. Company is a wholly-owned subsidiary of LeRoy Corporation. Leo Frey is also the President of P. M. & M. Company. The Limited Partners' agreement herein that such Management Agreement shall be executed is made with full knowledge of the above-mentioned facts,* and the Limited Partners further agree that upon execution of the Management Agreement by the General Partner, said Agreement shall be a valid and binding obligation of the Limited Partners and the Limited Partnership." (Emphasis added)

In addition, paragraph 10.07 of section 10 of the Limited Partnership Agreement provided in pertinent part:

"10.07. In the event the Limited Partnership lacks sufficient working capital, the General Partner will advance to the Limited Partnership such monies as are required therefor. *Such advances may include loans from the General Partner, from any affiliated entity, or from any other entity whatsoever.* . . ." (Emphasis added)

At the hearing on March 24, 1980, Tompkins presented no evidence that the general partner did any act which was outside the scope of the partnership agreement. In the absence of any such showing this Court fails to see how the appointment of a trustee would be in the interest of any of the parties involved.

Tompkins also requested, in the alternative, that an examiner be appointed. Under 11 U.S.C. § 1104, the Court must appoint such an examiner to investigate any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the debtor's affairs if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate.

Although the statute speaks in terms of *allegations* with regard to the appointment of an examiner, this Court is of the opinion that mere naked allegations are not enough to warrant the necessary expense and delay involved with such an appointment and investigation. This Court feels that although there is no requirement that actual misconduct or incompetence be proved, there should at least be some evidence presented that such allegations have some factual basis. To construe the statute otherwise would mean that an examiner must be appointed to conduct a complete investigation in every case where a party in interest makes a naked accusation, whether it be in good faith or bad.

As stated before, at none of the hearings conducted in this case, has Tomp-

kins made any showing whatsoever that the general partner may have done any act which was not specifically authorized by the Limited Partnership Agreement. In fact, at no time during any of the hearings did Tompkins appear other than through his counsel. No witness was presented before this Court other than the general partner. Tompkins, himself, has never appeared to testify that he was in any way misled or fraudulently induced to enter into this agreement. In the face of the evidence presented to this Court, it has no choice but to conclude that Tompkins has failed to furnish any information which would provide a basis for his allegations. The appointment of an examiner was therefore denied.

### III.

### Validity of Claims

■ The allowance of claims is covered by 11 U.S.C. § 502. Subsection (b) of that section lists the various types of claims which should be excepted from allowance. The only possible exception applicable to the claims of Leroy and P. M. & M. is of subsection (5) which excepts a claim "if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services."

11 U.S.C. § 101(25) defines the term "insider", as applicable here, as follows:

"(25) 'insider' includes—

"(C) if the debtor is a partnership—

"(i) general partner in the debtor;

"(ii) relative of a general partner in, general partner of, or person in control of the debtor;

"(iii) partnership in which the debtor is a general partner;

"(iv) general partner of the debtor; or

"(v) person in control of the debtor;"

.    .    .    .    .

"(E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and

"(F) managing agent of the debtor;".

Whether or not Leroy is an insider does not matter as to the issue of allowability of its claim. Since Leroy exercises no control over the debtor and provides no "services" for the debtor within the meaning of 11 U.S.C. § 502, its claim cannot be excepted from allowance.

■ As to P. M. & M., the hereinbefore quoted section 12 of the Partnership Agreement provided that the partnership was to execute a Management Agreement with P. M. & M. This Management Agreement was introduced into evidence as part of the Partnership Agreement. Section 1 of the Management Agreement states:

"Owner hereby employs Manager as the sole and exclusive renting, operating and managing agent of the property."

Under the provisions of 11 U.S.C. § 101(25)(F), P. M. & M. is, therefore, an insider.

■ P. M. & M.'s Proof of Claim filed in this case indicates that its claim is based entirely on cash advances rather than payment for services, however. Since P. M. & M. is not making any claim for payment of services, its claim does not fall within the exception of 11 U.S.C. § 502(b)(5) and must therefore be allowed.

### V.

### Disclosure Statement

Postpetition disclosure and solicitation is governed by 11 U.S.C. § 1125 which states in pertinent part:

"(a) In this section—

"(1) 'adequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan; and

"(2) 'investor typical of holders of claims or interests of the relevant class' means investor having—

"(A) a claim or interest of the relevant class;

"(B) such a relationship with debtor as the holders of other claims or interests of such class generally have; and

"(C) such ability to obtain such information from sources other than the disclosure required by this section as holders claims or interests in such class generally have.

"(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

"(c) The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes."

Under the above quoted language of § 1125 it can be seen that nonsubmissions of disclosure statements only operate to prevent solicitations of acceptances or rejections of the plan. This section seems only to require disclosure statements in the event there are solicitations of acceptances or rejections of the plan. In this case there has been no evidence presented to show that any such solicitations were made.

Notwithstanding the fact that, under § 1125, no disclosure statement may have been required in this case, this Court, in its Order of February 22, 1980, approved the plan itself as the disclosure statement since the plan contained "adequate information" as defined in § 1125(a)(1) above. Specifically this Court found that the plan contained adequate information to enable a reasonable investor to make an informed judgment about the plan.

One of the aspects which this Court considered as to the members of each class of claim or interest holders was, as stated in § 1125(a)(2)(C), their "ability to obtain such information from sources other than the disclosure" statement. Tompkins herein is an equity security holder by virtue of being a limited partner in the partnership. A limited partner has such information as the partnership agreement, management agreement, description of the partnership's property, and yearly financial information to support tax returns. This information coupled with the additional items covered by the plan itself such as the terms of the proposed sale, the sale agreement with Leroy which completely spelled out all of the procedures to be followed and dollar amounts involved, and the priority of all creditors and interest holders and how they were to be paid should have supplied "adequate information" to enable any of the limited partners to "make an informed judgment about the plan."

## VI.

### Confirmation of the Plan

Under 11 U.S.C. § 1129, this Court is required to confirm a plan if it meets the criteria as described therein, which the plan herein so did. Those criteria specifically at issue in this case will be discussed individually.

### A.

The plan complies with the provisions of § 1129(a)(7) which states in pertinent part:

"(7) With respect to each class—

"(A) each holder of a claim or interest of such class—

"(i) has accepted the plan; or

"(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; . . . ."

As to the order of payment of liabilities on dissolution of a limited partnership, Oklahoma's Uniform Limited Partnership Act, 54 O.S. § 164, provides:

"(a) In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order:

"(1) Those to creditors, in the order of priority as provided by law, except those to limited partners on account of their contributions, and to general partners.

"(2) Those to limited partners in respect to their share of the profits and other compensation by way of income on their contributions.

"(3) Those to limited partners in respect to the capital of their contributions.

"(4) Those to general partners other than for capital and profits.

"(5) Those to general partners in respect to profits.

"(6) Those to general partners in respect to capital.

"(b) Subject to any statement in the certificate or to subsequent agreement, limited partners share in the partnership assets in respect to their claims for capital, and in respect to their claims for profits or for compensation by way of income on their contributions respectively, in proportion to the respective amounts of such claims."

In addition, 54 O.S. § 157 provides in part:

"(a) A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until:

"(1) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them."

Thus it can be seen that under a Chapter 7 liquidation, no limited partner would be entitled to return of his contribution and profits, if any, until after the creditors of the partnership are paid. The plan provides that the interests of the individual partners will be satisfied from the proceeds of the sale of the partnership property after the partnership's creditor claims are satisfied. The plan thus provides the limited partners with the same right of return of their contributions and profit sharing as a Chapter 7 liquidation would.

### B.

As required by 11 U.S.C. § 1129(a)(10), "(a)t least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class." John Hancock Mutual Life Insurance Company comprises one class of claims in the plan by virtue of Hancock's being the only creditor holding a first mortgage on the debtor's property. Although Hancock has not formally filed an acceptance of the plan in the case, they are deemed to have accepted the plan under the provisions of 11 U.S.C. § 1126(f) which states:

"(f) Notwithstanding any other provision of this section, a class that is not impaired under a plan is deemed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interest of such class is not required."

John Hancock is not an insider as to the debtor. Under the provisions of the proposed sale agreement the property will be sold subject to Hancock's mortgage. The mortgage is not now in default and the current payments are being made by the general partner. Since the outstanding balance of Hancock's mortgage is well above the fair market value of the property, a cash sale will insure Hancock's being paid. Hancock is therefore in no way impaired by the plan under 11 U.S.C. § 1124, and their deemed acceptance of the plan satisfies the requirements of § 1129(a)(10).

### C.

11 U.S.C. § 1129(a)(8) imposes the requirement that with respect to each class,

such class has accepted the plan or, in the alternative, such class is not impaired under the plan. Tompkins is not impaired under the plan since, as stated in 11 U.S.C. § 1124(1), the plan leaves unaltered the legal, equitable, and contractual rights to which his interest entitles him. Also, as stated in § 1124(3)(B), under the plan, Tompkins will receive the same liquidation preference to which his interest entitles him.

This Court also finds that even if Tompkins were impaired under the plan, as to him the plan does not discriminate unfairly and is fair and equitable. Under the plan all equity security holders are treated alike, with the same priority of interest as they would otherwise have under applicable law and the partnership agreement. If the plan does not discriminate unfairly, and is fair and equitable, 11 U.S.C. § 1129(b) requires the plan be confirmed even if the requirements of § 1129(a)(8) are not met.

THIS COURT THEREFORE HOLDS, in light of the foregoing evidentiary considerations and conclusions that:

1. This Court had jurisdiction over all matters considered in this case,

2. No Trustee or Examiner need have been appointed,

3. The claims of Leroy and P. M. & M. were valid claims and properly allowed,

4. The plan and surrounding circumstances herein involved provided all parties with adequate information to make an informed judgment about the plan, and

5. The plan was properly confirmed as being fair and equitable and in compliance with applicable bankruptcy law.