In re MARSTON ENTERPRISES, INC./Spring Run Apartments, Co-Debtors,

BUFFALO SAVINGS BANK, Plaintiff,

v.

MARSTON ENTERPRISES, INC., Spring Run Apartments, Defendants.

Bankruptcy No. 180–00532.

United States Bankruptcy Court, E. D. New York.

May 11, 1981.

Leon S. Forman, Wexler, Weisman, Maurer & Forman, P. C., Philadelphia, Pa. S. A. Hauptman, Hauptman & Hauptman, Brooklyn, N. Y., for defendants.

Saperston, Day, Lustig, Gallick, Kirschner & Gaglione, P. C., Frank T. Gaglione and Neil J. Katz, Buffalo, N. Y., Berle & Berle, New York City, Thorold J. Deyrup, New York City, for plaintiff.

CONRAD B. DUBERSTEIN, Bankruptcy Judge.

This case is pending in Chapter 11. Shortly before the petition for relief was filed, Buffalo Savings Bank (hereinafter "Bank") had commenced foreclosure of a first mortgage on real property located in

Delaware. When the petition was filed, the Bank's foreclosure was automatically stayed pursuant to 11 U.S.C. § 362. A complaint for relief from the stay was filed by the Bank. The complaint sought as alternative relief, dismissal of the case or conversion to Chapter 7. The co-debtors oppose the relief sought and have filed an amended plan of reorganization. The Bank urges that the amended plan is incapable of confirmation as a matter of law. The parties agreed that the sufficiency of the amended plan be submitted for the court's determination.

It is conceded by both parties that there is no equity in the real property which is security for the debt of the Bank (nine buildings containing 184 rental apartments located in New Castle County (hereinafter "The Project")). A valuation hearing has not been held to this date. During the course of the proceedings, Bankruptcy Judge Costa, before whom the case was pending, died and it was several months before a successor was available. The Bank has generously waived the strict time table set forth in § 362(c) of the Code. Partial relief has been granted permitting the Bank to continue the state court foreclosure to the point of judgment. In addition, 90% of the net monthly income is set aside for payment of interest to the Bank.

■ The basic facts are not in dispute. The Project is subject to mortgage encumbrances in the approximate amounts and to the creditors listed as follows:

1.  To the Bank -- First Mortgage
    in excess of      $2,300,000.

2.  To Florence Werb – Second Mortgage – in excess of      359,000.[1]

3.  To the Bank – Third Mortgage
    in excess of      100,000.

Counsel for the Bank indicated that its appraisal would not exceed $2,000,000, and the debtor suggested a value of $900,000. This is the same valuation as is stated in the

schedules. These figures indicate no equity for the debtor in The Project. In essence, the debtor is seeking to "cramdown" the Bank's first mortgage, (i. e., pay the appraisal value of the property in full satisfaction of the debt).

Section 362(d) requires the court to grant relief from the stay:

"(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

The phrase "necessary to an effective reorganization" means more than that the subject property is the vehicle without which there can be no reorganization. Where the sole asset in an estate is the encumbered real property, the property is obviously sine qua non to a reorganization. Without it, there is nothing to reorganize. The true meaning of the phrase, however, is broader. The key word is "effective." *In re Clark Technical Associates, Ltd.*, 9 B.R. 738, 3 C.B.C.2d (Bkrtcy.D.Conn.1981). Does the proposed plan comply with the provisions of Chapter 11 relative to acceptance and confirmation of the plan? Are there resources at hand or within reach to implement the plan within a reasonable time? *In re Terra Mar Associates*, 3 B.R. 462 (Bkrtcy.D.Conn. 1980). If the answer to both questions is "yes", there can be an effective reorganization even though there is no equity in the real property for the debtor. The parties have stipulated that if the court finds that the amended plan cannot be confirmed as a matter of law, the stay will be lifted, as such determination would preclude the possibility that the property is necessary to an effective reorganization. However, if the plan as amended is possible of confirmation, a valuation hearing will be assigned promptly.

The amended plan provides that:

---

1. Florence Werb is the wife of Louis Werb, a partner in co-debtor, Spring Run Apartments, and a shareholder in co-debtor, Marston Enterprises, Inc. As such, she is an insider (§ 101(25)(B)(vi) and § 101(25)(C)(ii)), and her

acceptance of a plan of reorganization may not be computed in determining whether the class, of which she is a member, has accepted the plan (Sec. 1129(a)(10)).

(A) A valuation hearing will be held which will classify the Bank's first mortgage debt as

(a) a secured claim equal to the value of the security, and (b) an unsecured debt representing the deficiency. *See* 11 U.S.C. § 506(a). The subordinate mortgage debts of Werb and the Bank will be declared unsecured.

(B) Creditors and interests will be divided into four classes as follows:

(1) The secured claim of the Bank;

(2) A class of unsecured creditors [2] including:

(a) the unsecured portion of the Bank's first mortgage claim,

(b) the Werb mortgage claim,

(c) the Bank's note secured by the third mortgage;

(3) The partnership interest of the co-debtor, Spring Run Apartments;

(4) The equity security interest of the holders of common stock of the co-debtor, Marston Enterprises, Inc.

(C) The secured claim of the Bank in Class (1) will be paid in full in cash.

(D) The unsecured claims (Class 2) will receive no payments or property and the debts will be cancelled.

(E) The partnership interests in Spring Run Apartments (Class 3) and the stockholders of Marston Enterprises, Inc. (Class 4) will similarly receive no payments and will be extinguished.

(F) The funds necessary to implement the plan will be supplied by the holders of stock of the co-debtor, Marston Enterprises, Inc., who will receive new common stock on a pro rata basis in the reorganized debtor.

In considering whether the proposed plan is viable and can be funded, the court must assume arguendo that each provision of the plan can be implemented. Beyond that, the court must determine whether the plan is capable of confirmation, as urged by the debtor, or is incapable of confirmation, as a matter of law, as argued by the Bank.

The amended plan appears to meet all of the requirements of § 1123 of the Code (Contents of Plan). The plan designates the classes of claims and classes of interests. (§ 1123(a)(1)). The plan further specifies that the secured portion of the Bank's claim will be paid in full and is therefore unimpaired. (§ 1123(a)(2)). All other claims are impaired.[3] The plan provides that all impaired claims receive no payment and that all impaired interests, as such, are cancelled and extinguished. (§ 1123(a)(3)).

All claims or interests in a class are treated equally. (§ 1123(a)(4)) The plan provides that its execution will be accomplished by refinancing the real property of the debtor and by the contribution of such cash as is necessary by the holders of common stock of the corporate debtor, Marston Enterprises, Inc. (§ 1123(a)(5)) The plan restricts the issuance of non-voting equity securities and regulates the voting power between classes of stock. (§ 1123(a)(6)) The plan further provides for one class of voting stock and the submission for the court's approval of charter provisions and by-laws respecting the selection of officers and directors. (§ 1123(a)(7)) This court must conclude that the plan meets all technical requirements and complies with § 1123 as to its content. There remains the question: Can it be confirmed?

Section 1129 sets the criteria for confirmation. *All* the requirements of § 1129 must be met. The first six requirements are technical in nature and are not relevant

---

**2.** The schedules and the original plan listed no general creditors. The amended schedules list four creditors whose claims total approximately $16,000.

**3.** Section 1124 provides in part:

"... a class of claims or interests is impaired ... unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder of such claim or interest:".

Since the unsecured creditors receive nothing and the interest of the co-partners in Spring Run Apartments and the stockholders of Marston Enterprises, Inc. are extinguished, these classes of creditors and interests are impaired under the plan.

to the issues which were joined by the litigants. The seventh requirement is that under the plan each member of the impaired classes must either accept the plan or receive not less than they would receive in a liquidation under Chapter 7. (§ 1129(a)(7)) [4] Since there would be no realization for any claim or interest after the secured part of the Bank's claim, this requirement is met. Section 1129(a)(8) requires that each class either have accepted the plan or be unimpaired and § 1129(a)(10) requires that at least one class of claims has accepted the plan.

The Bank has concentrated on two major objections. The first is that the plan is not fair and equitable in that the individuals who are shareholders of the co-debtor corporation, Marston Enterprises, Inc. will retain an equity interest even though the two superior classes, the unsecured creditors and the co-partners in Spring Run Apartments, will receive no payment or property. (Sec. 1129(a)(7)(A)(ii), Sec. 1129(b)) The second objection is that the plan is not capable of being accepted by at least one class of claims, qualified to accept, as required by § 1129(a)(10).

The plan proposes that it be funded by contributions on a pro rata basis by the holders of stock in Marston Enterprises, Inc. The *original equity interest* of these contributions would be cancelled. Their equity participation in the reorganized corporation would be based upon *new* contributions and therefore *new* consideration. Their interest in the reorganized debtor corporation would not be as original stockholders of the debtor, but as investors in the reorganized corporation. The Bank urges that this device is a sham, a fraud on unsecured creditors and is not permissible under § 1129(b). Section 1129(b) contains a modification of the absolute priority rule which was contained in Chapter X of the Bankruptcy Act. It requires that where the dissenting class receives less than the full amount of its claim, no inferior class may retain any interest or receive any distribution. Thus, if no new money were contributed or the amount contributed a trivial sum, the retention of an interest by an inferior class would be a fatal defect in violation of the fair and equitable requirement. *Louisville Trust Company v. Louisville, New Albany and Chicago Railway Company* 174 U.S. 674, 19 S.Ct. 827, 43 L.Ed. 1130 (1899); *Case et al. v. Los Angeles Lumber Products Co.* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); *In re Landau Boat Co.* 7 B.C.D. 255, 8 B.R. 436 (Bkrtcy.W. D.Mo.1981). Similarly, if mortgage financing is available to the full amount necessary to fund the plan, requiring no new investment on the part of the shareholders of the debtor corporation, such an investment would be contrary to the spirit, as well as the letter, of § 1129(b)(2)(B)(ii) and § 1129(b)(2)(C)(ii).

Counsel for the debtor urges that the evidence will show that the amount necessary to finance the plan will be substantial. In his brief he suggests that this would amount to between $300,000 and $400,000 of new money, which he contends is significant enough to justify the inclusion of the individuals who were stockholders, as investors under the plan. The Code is silent as to the right of stockholders in a reorganized corporation to acquire by investment an equity interest where superior classes of creditors or interests have not been paid in full or accepted the plan. Section 1129 of the Code is derived from Chapter X of the Act, which governed corporate reorganizations.

---

4. Sec. 1129(a)(7) provides that:
"With respect to each class—
(A) each holder of a claim or interest of such class—
(i) has accepted the plan; or
(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date; or
(B) If section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secures claims."

Case law had developed under Chapter X that authorizes such participation where fresh contributions are made by existing stockholders. The principle is well summarized in 6A, *Collier on Bankruptcy* (14th Ed.) Para. 11.06 at p. 228 as follows:

"Circumstances may exist where the success of an undertaking requires that new money be furnished and where the former stockholders are the only or most feasible source of the new capital... In such instances, the court may confirm the plan as fair and equitable 'provided it satisfactorily appears that full recognition has been given to the value of creditors' claims against the property.'"

In *Case v. Los Angeles Lumber Products Co., Ltd. supra*, the Supreme Court stated the following:

"[10, 11] It is, of course, clear that there are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor. This Court, as we have seen, indicated as much in *Northern Pacific Railway Co. v. Boyd, supra* [228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931] and *Kansas City Terminal Ry. Co. v. Central Union Trust Co., supra* [271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028]. Especially in the latter case did this Court stress the necessity, at times, of seeking new money 'essential to the success of the undertaking' from the old stockholders.[15] Where that necessity exists and the old stockholders make a fresh contribution and receive in return a participation reasonably equivalent to their contribution, no objection can be made." *Case supra*, 308 U.S. at 121, 60 S.Ct. at 10.

The Court went on to state that such a contribution must be substantial. *See also, Matter of Dutch Woodcraft Shops*, 14 F.Supp. 467 (W.D.Mich.1955).

■ There is no statutory prohibition against original shareholders making a substantial necessary capital contribution in consideration for which they received shares of stock in the reorganized corporation. There is also nothing in the Code which precludes the case law which developed under Chapter X of the Bankruptcy Act, relating to corporate reorganization, from application to Chapter 11 of the Bankruptcy Code. The case of *In re Landau Boat Co., supra*, adapts these principles to the Code. If $300,000 to $400,000 of new money were needed to fund the plan, and the consideration came from new investors who were not shareholders, it would not violate the fair and equitable rule to permit them to contribute capital and receive shares of stock in the reorganized corporation. There is no reason why investors of new capital who happen to be shareholders, whose equity interest as old shareholders is extinguished, should be disqualified from investing in the reorganized corporation, where their contribution is substantial, as is the case herein. It would not violate the fair and equitable standard.

■ The second major objection is that no class of claims will have accepted the plan. The first class consists of the Bank's secured claim which will be paid in full and is not impaired. Section 1126(f) provides that such a claim "is deemed to have accepted the plan."[5] The second class consists of unsecured claims which include the following:

a) general creditors listed in the amended schedules—$16,000;

b) the unsecured portion of the Bank's first mortgage which may be $300,000 to $1,400,000;

c) the amount of the Werb mortgage—$250,000;

d) the Bank's third mortgage debt—$100,000.

The Werb claim, being that of an insider, is ineligible to accept. Sec. 1129(a)(10).[6] The Bank has stated that it will reject any plan. Therefore, the second class of creditors can-

---

**5.** Section 1126(f) provides:

"(f) Notwithstanding any other provision of this section, a class that is not impaired under a plan is deemed to have accepted the plan, and solicitation of acceptances with re- spect to such class from the holders of claims or interest of such class is not required."

**6.** *See* n(1) *supra*.

not accept the plan by the requisite majority. The members of the third class (co-partners in Spring Run Apartments) are insiders not eligible to vote. Furthermore, § 1129(a)(10) requires that "At least one class of *claims* has accepted the plan..." This eliminates the third class of co-partners who have *interests* but do not have *claims*. The same disqualification applies to the fourth class which consists of the shareholders of the corporate co-debtor. Even if classes of "interests" could vote, the members of the third and fourth classes, being insiders, are disqualified from voting. There remains the first class.

The debtor urges that since the Bank's secured claim, being unimpaired and paid in full, is *deemed* to have accepted the plan under § 1126(f), this fulfills the requirement of § 1129(a)(10), that one class of claims must accept the plan. The Code is silent as to this situation. Section 1126(a) provides: "The holder of a claim or interest ... may accept or reject a plan." Thus, the Bank may, but is not required to, accept or reject the plan. In fact it has rejected it. The language of § 1126(a) suggests an affirmative act of acceptance or rejection by the *creditor* or interest holder.[7]

The Senate Report No. 95–989, 95th Cong. 2d Sess. (1978) 123, U.S.Code Cong. & Admin.News 1978, p. 5909 commenting on § 1126(f) [referred to in the Senate Report as subsection (e)] states that it "provides that no acceptances are required from any class whose claims or interests are unimpaired under the plan or in the order confirming the plan."

Section 1126(g) provides:

"(g) Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests ... do not entitle the holders ... to any payment or compensation..."

The Senate Report, *supra* comments in part: "Subsection (g) provides that any class denied participation under the plan is *conclusively deemed* to have rejected the plan." (emphasis added). The difference in language may be significant. The Senate Report noted that an unimpaired class was *deemed* to accept the plan, whereas an impaired class which received nothing under the plan was *conclusively deemed* to have rejected the plan. In other words, the presumption of acceptance under § 1126(f) is *rebuttable* while the presumption of rejection under § 1126(g) is *conclusive*. Under this analysis, the presumption of acceptance was rebutted by the *rejection* of the plan by the Bank as an unimpaired creditor (as to its secured claim).

Section 1129(a)(8) further requires as a condition of confirmation that:

"With respect to each class—

(A) such class has accepted the plan; *or*

(B) such class is not impaired under the plan." (emphasis added).

It can be argued that § 1129(a)(8) intended to excuse any class not impaired under the plan from *any* requirement to vote. In this context, "to deem" that the non-impaired class has accepted the plan is unnecessary and a futile gesture.

The dilemma is recognized by Collier which comments in 5 *Collier on Bankruptcy* (15th Ed.) at ¶ 1129.02[10]:

"[10]—Minimum Acceptance.

Section 1129(a)(10) requires as a condition of confirmation that

'At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class'...

The only issue presented by section 1129(a)(10) is whether the condition set forth in the paragraph is satisfied by section 1126(f) which states that a class which is not impaired under a plan, is deemed to have accepted the plan. Ulti-

---

7. The Senate Report describes the predecessor of Section 1129(a)(1) (Section 1130(a)(12) of S. 2266, 95th Cong. 2d Sess.) as follows:
    "Paragraph (12) requires that at least one class *must* accept the plan..." (emphasis added). S. Report No. 989, 95th Cong. 2d Sess. 128 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5914.

mately, this issue will be determined by the courts or by a technical amendment to the Code. On the other hand, it may be argued that Section 1129(a)(10) requires affirmative acceptance and that leaving a class unimpaired is different from obtaining the affirmative acceptance of a class. The language of Section 1129(a)(8) supports this construction.

On the other hand, it may be argued that section 1129(a)(10) represents a compromise between cases following *In re Herweg*[45] which require affirmative voting acceptance of a class of creditors and the position taken in a number of recent bankruptcy court decisions that a Chapter XII plan of arrangement may be confirmed without the consent of any class of creditors.[46]

Under this construction of subsection (a)(10), implied consent under section 1126(f) satisfies the requirement of section 1129(a)(10), because an *unimpaired class would surely* vote *to accept the plan if permitted to do so.*[47] Thus while an affirmative vote is not required, the plan cannot be confirmed if every class is impaired and fails to accept the plan." (emphasis added).

Collier thus suggests that "an unimpaired class would surely vote to accept the plan if permitted to do so." If this premise is correct, it is logical therefore to deem that the unimpaired class will accept the plan. The opposite is found to be true in the instant case. The unimpaired creditor will not accept any plan. Collier's reasoning is predicated upon a premise which is not correct in this case. To deem that a party has accepted a plan when the fact is that it has rejected the plan, is Alice in Wonderland reasoning which this court cannot accept.

The verb "deem" is defined in the New Century Dictionary as—"to pronounce judgment; to form an opinion; judge; think." In this context it is illogical to "form an opinion" or "pronounce judgment" that the Bank has accepted the plan in the face of a positive rejection.

The quotation from 5 Collier on Bankruptcy (15th Ed.) ¶ 1129.02[10] suggested that "Ultimately this issue will be determined by the courts or by a technical amendment to the Code." Shortly after the enactment of the Code, the drafters recognized many areas of ambiguity in the drafting and a Technical Amendments Bill (S.658) was prepared and introduced on September 11, 1979. While it is not controlling on this court as the law, it reflects the thinking of the drafters. It provided in part:

"Sec. 107.(a) Section 1129(a) of Title 11 of the United States Code is amended—
... (9) by amending paragraph (10) to read as follows:
'(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.' "

The conclusion reached by this court from an examination of the Code and the Congressional Reports and a consideration of the facts in the instant case is that § 1129(a)(10) requires that one class of impaired claims must actively accept the plan. Even if, arguendo, this conclusion is in error, the provision of § 1126(f) deeming an unimpaired creditor to have accepted the plan is to be considered at best, prima facie acceptance, a presumption which was rebutted by the actual rejection of the plan by the Bank.[8] There being no class of claims

---

**8.** The debtor cites *In re Bel Air Associates, Ltd.,* 6 B.C.D. 284, 4 B.R. 168 (Bkrtcy.W.D.Okl. 1980) as supporting its claim that the deemed acceptance of the Bank satisfies the requirement of § 1129(a)(10) that one class of claims must accept the plan. That case is clearly distinguishable on the facts. Under the plan, the real property on which the secured creditor (Hancock) held a mortgage was to be sold subject to the mortgage. The mortgage was

not in default, current payments being made by the general partner who filed the petition. In fact, *nothing* was being done to Hancock's mortgage. It was not affected by the plan. The court observed "... a cash sale will insure Hancock's being paid. Hancock is therefore in no way impaired by the plan under 11 USC § 1124 and their deemed acceptance of the plan satisfies the requirements of § 1129(a)(10)." Two additional facts must be noted. The ob-

capable of accepting the plan, it cannot meet the requirements of § 1129(a)(10) as to confirmation.

It is found that the plan as amended is a viable plan, which technically is capable of acceptance and confirmation as formulated. However, under the admitted facts, the court cannot deem that the first class of claims, the Bank's secured claim, has accepted the plan, when in fact, it has rejected the plan. The only other class of claims, the unsecured, is dominated by the Bank's unsecured deficiency on its two mortgages and it has rejected the plan. Accordingly, the plan cannot meet the criterion for confirmation mandated in § 1129(a)(10) that "at least one class of claims has accepted the plan."

In his brief, counsel for the debtor commented that the Bank had not elected to have its claim treated under § 1111(b)(2) which provides that a secured claim is secured to the full extent that the claim is allowed ($2,300,000) rather than to the extent of the value of the collateral ($900,000 to $2,000,000) as under § 506(a). Had the Bank so elected, counsel indicated a different plan would have to be filed. Since the Bank has not so elected, that possibility is precluded.

In summary, it is concluded that the Bank can meet the first requirement of § 362(d)(2) that there is no equity in the real property, which it seeks to foreclose. However, the debtor has failed to prove that an effective reorganization can be consummated. Accordingly, the Bank's prayer for relief from stay is granted. It is

SO ORDERED.

jection to confirmation was filed by a limited partner of the debtor, rather than, as here, by the impaired creditor. Furthermore, Hancock had not filed a formal acceptance or rejection. In the instant case, the Bank affirmatively rejected the plan. Furthermore, the Bank had instituted foreclosure of its mortgage which had been in serious default for months. In Hancock, the mortgage was not in default and foreclosure could not be instituted. Hancock was perfectly content with the plan. In the instant case, the opposite is abundantly clear.