**In re ECONOMY CAST STONE COMPANY, Debtor.**

**Bankruptcy No. 79–01468.**

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

Dec. 8, 1981.

Benjamin C. Ackerly, Hunton & Williams, Richmond, Va., for debtor-in-possession.

Carl J. Witmeyer, Witmeyer & Webb, Richmond, Va., for objecting creditor.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

Economy Cast Stone Company (Economy), Debtor herein, filed its petition under Chapter 11, Title 11, United States Code, on October 5, 1979. Since the filing of the petition and pursuant to Order entered herein on October 25, 1979, Economy has continued to operate its business. The Order authorizing Economy to continue the operation of its business provided that the Debtor "would segregate and hold separate and apart from all other funds all monies deducted and withheld from employees' wages and salaries or collected from others for taxes under any law of the United States or any state in an account designated Economy Cast Stone Company, Debtor, tax account. During the pendency of this proceeding, such funds shall be disbursed when due, only for particular purposes for which

they are set aside and in the manner prescribed by law ..." The Debtor has now ceased all operations and maintains a skeleton crew for security purposes at its two plant locations in the Richmond area.

A hearing on the Disclosure Statement, after notice to creditors, was held July 14, 1981. After approval of the Disclosure Statement the Plan was mailed to all parties in interest and the hearing on confirmation was held September 22, 1981. The Plan provides for the liquidation of the assets of the corporation.

Transamerica Trailer Services filed a formal objection to the Plan of Confirmation. Flintkote Stone Products Company and Harvey R. Shipley & Sons, Inc. submitted to the Court letters of objection to confirmation, but those parties did not appear through any corporate officers or by counsel to voice their objection at the hearing on confirmation. Transamerica Trailer Services, the objecting creditor who did appear, objected to the priority afforded to Ernest Wiedemann (Wiedemann), the principal stockholder and chief executive officer of the Debtor. After hearing, this Court asked for briefs in argument but prior to the time alloted for submitting briefs, Transamerica Trailer Services submitted an order authorizing its withdrawal of the objection to confirmation. That order has not been acted upon.

The Plan establishes nine classes of creditors in descending order of priority as follows:

 I. Creditors having priority pursuant to § 507(a)(1).

 II. Creditors having priority pursuant to § 507(a)(2) through (5)—there are none in this class.

 III. Tax liability creditors pursuant to § 507(a)(6).

 IV. Central Fidelity Bank, a lien creditor allegedly fully secured, who will be paid from the proceeds of the sale of real estate briefly described as the Glen Allen Property.

 V. Two judgment lien creditors who will be paid in full in liquidation of property briefly described as South Richmond Real Estate which is alleged to have a value in excess of the amount of their judgment liens.

 VI. International Harvester Corporation, a lien creditor who has now been paid in full as the result of installment payments made on its note during the pendency of this proceeding.

 VII. Ernest A. Wiedemann, the chief executive officer and principal stockholder of the Debtor, who is owed $175,401.35 for advances made by him since the filing of the petition in this proceeding on behalf of the Debtor in payment of the note secured by the deed of trust held by Central Fidelity Bank (Class IV creditor). This class has priority over Class VIII creditors only to the extent that there remains equity in the Glen Allen real estate after the satisfaction of the debt due to Class IV creditor.

 VIII. All other creditors including Ernest A. Wiedemann to the extent he is not satisfied as a Class VII creditor.

 IX. Stockholders of Economy.

After the exclusion of insiders from the Class VIII creditors, the Debtor failed to get a satisfactory vote for acceptance of the Plan. No other class of creditors, excluding insiders, has voted for the Plan.

The Court faces the following issues in determining whether to confirm the Debtor's Plan.

 1. Should the Court find the Debtor acted in good faith where the Debtor has violated the terms of the Court Order requiring a sequestration of funds deducted from the wages of employees or collected from others for the payment of taxes during the operation of its business subsequent to the filing of its petition in this Court?

2. Does the Court have an independent obligation to give consideration to an alleged improper classification of creditors where the objecting party who filed a formal objection to the Plan has attempted to withdraw that objection and where other creditors have noted their objection in writing by letters directed to the Court?

3. May Ernest A. Wiedemann, the chief executive officer and principal stockholder of Economy, be classified as an administrative cost creditor if he voluntarily and without Court knowledge or approval and in contravention of the Court's Order authorizing operation of the business, which Order prohibited payment on pre-filing obligations unless authorized, made payments to Central Fidelity Bank (CFB) on a secured debt of the corporation, which was personally guaranteed by him?

4. If Ernest A. Wiedemann is not an administrative cost creditor but is entitled to reimbursement for funds advanced by him to Economy, can the Court confirm a plan which gives an insider (Wiedemann) a different and superior priority from other unsecured creditors of Economy?

5. Absent an affirmative vote of a class accepting the Plan, does the creation of a class of creditors alleged not to be impaired by the Plan and on which no vote is taken, meet the requirements of 11 U.S.C. § 1129(a)(10)?

6. Presuming the above issues are resolved in favor of the Debtor and finding that the creditors in each class will receive as much as they would receive in liquidation as required in § 1129(a)(7), can this Court find that the Plan meets the fair and equitable test imposed by § 1129(b)(1) with respect to those creditors in Class VIII that are impaired under and have not accepted the Plan?

In considering seriatim the issues raised this Court believes the response to each of the issues should be in the negative.

■ Economy offered no excuse for its failure to segregate and hold separate and apart the funds representing moneys deducted and withheld from employees' wages and salaries and collected from others for taxes. Economy in argument contends that in liquidation of the estate there will be sufficient funds to cover this deficiency because of the priority created for pre-existing and post-petition tax liabilities. This is no excuse for a violation of a Court order. Economy continued to lose money. Had Economy properly segregated these funds and not used them in its operation, the Plan probably would have ceased operation sooner which would have had the effect of cutting its losses. The violation of an order of the Court to the probable detriment of the creditors is shocking to the Court and this Court cannot find that the Debtor is operating in good faith under those circumstances. Good faith is a prerequisite to the filing or continuation of a proceeding under Chapter 11 of the Bankruptcy Code. *See, In re Victory Construction Company, Inc.*, 9 B.R. 549 (Bkrtcy.C.D.Cal.1981).

■ Even with the absence of a creditor's formal objection to confirmation of a plan, 11 U.S.C. § 1129 requires the Court to confirm a plan only if the requirements of § 1129 are met. This requires, in part, an independent assessment by the Court of compliance with the requirements of § 1129(a), as well as § 1129(b) if it is brought into play as a result of § 1129(a)(8) requirements not having been met. This duty has been imposed upon the Court by § 1129 and the lack of formality of the objections does not preclude the Court from considering the nature of the objection because the Bankruptcy Court is a court of equity and guided by equitable doctrines and principles. *See, Securities and Exchange Commission v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

■ 11 U.S.C. § 364 which applies to cases filed under Chapter 11 of the Bankruptcy Code authorizes the obtaining of

unsecured credit and the incurring of unsecured debt in the ordinary course of business and is allowable as an administrative expense while the authority to operate the business exists. Wiedemann, the chief executive officer and principal stockholder, continued to make payments on the loan secured by a deed of trust on the property owned by Economy in Glen Allen, Virginia. The Order authorizing the Debtor to continue in business in paragraph 5 thereof stated as follows:

> "Not to pay or satisfy out of the money or assets of its estate any creditor for any debt which was incurred prior to the filing of its Petition or which could be dealt with or affected under the Plan to be proposed herein."

Wiedemann in personally paying the monthly mortgage payments was making payments on an obligation that antedated the filing of the Chapter 11 petition. In doing this he committed an act the Debtor was prohibited from doing by the aforesaid Court order. Although the Debtor's right to make payments in the ordinary course of business exists under 11 U.S.C. § 364, the authority to make pre-petition debt payments was denied by said Order. Wiedemann, in using his own funds to make Debtor's mortgage payments on the property occupied by the Debtor in the operation of its business may have prolonged the life of the Debtor. Had Wiedemann not made the payments, it is likely that this proceeding may have aborted at an earlier time with a savings to creditors because the Debtor continued to lose money in the operation of the business as Wiedemann advanced these funds. This is primely illustrated by the unpaid tax liabilities currently due on employee withholding taxes and paid and accrued accounting and attorney's fees. This Court does not believe that the payments made by Wiedemann to the secured creditor (CFB) on the obligation of the Debtor (and guaranteed by Wiedemann) when made in violation of an express prohibition of a court order, is entitled to an administrative priority.

■ This Court further believes that it is not fair and equitable to allow Ernest A. Wiedemann, an insider as defined by 11 U.S.C. § 101(25), to share the same priority with general unsecured creditors of the Debtor. In *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) the Supreme Court determined that it would be inequitable for an insider to share equally with general creditors of the Debtor in liquidation of the Debtor's estate.

> "... the bankruptcy court in passing on allowance of claims sits as a court of equity. Hence these rules governing the fiduciary responsibilities of directors and stockholders come into play on allowance of their claims in bankruptcy. In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder. *That is clearly the power and duty of the bankruptcy courts under the reorganization sections.*" *Pepper* at 307–308, 60 S.Ct. at 245–46, (emphasis added) (footnote omitted).

The same test of fairness must be applied here particularly in light of general creditors' objections to a classification inferior to that of an insider.

■ As a condition of confirmation of a Chapter 11 plan, 11 U.S.C. § 1129(a)(10) requires "at least one class of claims has accepted the plan, determined without including any acceptance to the plan by an insider holding a claim of such class". Economy argues that this condition is satisfied by § 1126(f) which states that a class which is not impaired under a plan is deemed to have accepted the plan. This Court holds that leaving a class unimpaired is different from obtaining the affirmative acceptance of a class and 11 U.S.C. § 1129(a)(10) requires affirmative acceptance.

This very issue was faced in *In re Marston Enterprises, Inc.*, 13 B.R. 514 (Bkrtcy. E.D.N.Y.1981). *Marston* only differs from

the instant case because in *Marston* one of the unimpaired creditors objected to the confirmation of the plan. The court in *Marston* held that an unimpaired creditor has the right to reject a plan. *Id.* at 520. It found that "the provision of § 1126(f) deeming an unimpaired creditor to have accepted the plan is to be considered at best, prima facie acceptance, a presumption which was rebutted by the actual rejection of the plan by the Bank". *Id.* (footnote omitted).

The *Marston* court noted further, however, that one class of impaired claims must actively accept the plan of confirmation pursuant to 11 U.S.C. § 1129(a)(10).

No plan may be confirmed unless all the requirements of 11 U.S.C. § 1129 are met. Section 1129(a)(8) requires that each class must either accept the plan or be unimpaired under the plan. This section distinguishes between classes which have accepted the plan and classes which are unimpaired under the plan. Such language would be surplusage if acceptance of the plan was identical to a class being unimpaired under the plan. Section 1129(a)(10) requires that at least one class of claims must accept the plan and § 1129(a)(8) indicates that being unimpaired and accepting are two different states. This Court can only conclude that at least one class of claims must actively accept the plan and that a class is not deemed to have accepted the plan simply because it is not impaired under the plan. *See*, 5 *Collier on Bankruptcy*, (15th Ed. 1981) ¶ 1129:02[10]. Not all courts are in accord; however, this Court finds the law as enunciated above to be the better rule. *Contra, In re Bel Air Associates, Ltd.*, 4 B.R. 168 (Bkrtcy.W.D.Okl. 1980).

11 U.S.C. § 1129(b) specifically states that the Court on a request of the proponent of the plan shall confirm it if the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under the plan and has not accepted the plan. An interest or claim is impaired under a plan unless it remains unaltered in its legal, eq-

uitable and contractual rights connotation. 11 U.S.C. § 1124. This is a factual unalteration of the claim. It is clear that Class VIII creditors are impaired under the Plan. To allow Wiedemann, an insider, to make payments on the Debtor's obligation for which he was personally a guarantor and then to offer a Plan for the Debtor which creates a priority of payment superior to general unsecured creditors not only discriminates but this Court also finds it not to be fair and equitable. *See, Pepper.*

For any of the above reasons this Court believes that the Plan should not be confirmed. The cumulative effect of all of the reasons requires this Court to state that the Plan cannot be confirmed.