## In re POLYTHERM INDUSTRIES, INC., Debtor.

### Bankruptcy No. 83–C–27–C.

United States District Court,
W.D. Wisconsin.

Oct. 17, 1983.

Thomas W. Gruesen, Duluth, Minn., for debtor, Polytherm Industries, Inc.

Lowell H. Forte, Cedar Rapids, Iowa, for appellants Long & Klouda.

Robert C. Gee, Superior, Wis., for appellant First Nat. Bank of the City of Superior.

Sheree Gowey, Asst. U.S. Atty., Madison, Wis., for appellant Economic Development Admin.

## ORDER

CRABB, Chief Judge.

This is an appeal by several creditors from an order of the United States Bankruptcy Court for the Western District of Wisconsin confirming the plan for reorganizing Polytherm Industries, Inc. under Chapter 11 of the Bankruptcy Code. Appellants First National Bank of the City of Superior and Economic Development Administration object to confirmation of the amended plan on four grounds: (1) the plan fails to satisfy the requirements of 11 U.S.C. § 1129(b) because the class of secured creditors is impaired under the plan and the proposed treatment of this class is not fair and equitable; (2) the debtor's projections of income and expense and inadequate recapitalization are unreasonable and, therefore, the plan is not feasible as required by 11 U.S.C. § 1129(a)(11); (3) the bankruptcy court failed to make findings of fact necessary for the present value analyses required by 11 U.S.C. § 1129(b); and (4) the bankruptcy court abused its discretion by failing to make findings of fact to support its legal conclusions in both confirming the plan and dismissing the appellant bank's application for dismissal under 11 U.S.C. § 1112(b).

Appellants Robert T. Long and Edward J. Klouda d/b/a Plastic Specialties, Ltd., object to the amended plan because no impaired class accepted the plan as appellants contend is required under 11 U.S.C. § 1129(a)(10) and because the plan fails to identify unimpaired classes as required under 11 U.S.C. § 1123(a)(2) and 11 U.S.C. § 1129(a)(1). Appellant Long argues further that the bankruptcy court denied him an opportunity to be heard and to present evidence and witnesses even though he timely requested a right to be heard and he argues that the debtor rejected certain addendum agreements tacitly without bankruptcy court approval. In connection with this latter claim, appellant Long proceeds to argue the merits of the underlying dispute for which relief from stay was denied.

In an order dated December 24, 1982, this court adopted an Emergency Rule Regarding Bankruptcy Cases and Proceedings which provides for district court review of bankruptcy decisions on Title 11 matters when notice of appeal is filed within 10 days of the bankruptcy court order. Emer-

gency Rule paragraph e(1). For reviews of bankruptcy court orders, the emergency rule provides in paragraph e(2)(B), "the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge." In *Moody v. Martin,* 27 B.R. 991 (Bkrtcy.W.D. Wis.1983), a case upholding the constitutionality of the emergency rule, I held that the standard of review applicable to bankruptcy determinations under the emergency rule was *de novo,* rather than clearly erroneous. Therefore, rather than review the findings of the bankruptcy court, I will proceed to make my own findings of fact from the record.

## FACTS

Polytherm Industries, Inc. manufactures polystyrene foam insulation products and has done so since it was incorporated under the laws of Wisconsin on April 13, 1978. Polytherm's manufacturing facility and corporate headquarters are located in Superior, Wisconsin. On January 27, 1982, Polytherm filed a voluntary petition for reorganization with the United States Bankruptcy Court for the Western District of Wisconsin pursuant to Chapter 11 of the United States Code. On June 3, 1982, the debtor filed a proposed plan of reorganization and a disclosure statement. Several creditors and interested parties: the First National Bank of the City of Superior, Robert T. Long, Robert A. Weinhardt, and Plastic Specialties, Ltd., filed objections to the disclosure statement. After the debtor submitted supplementary material, the parties withdrew their objections. On July 30, 1982, the bankruptcy court approved the disclosure statement.

In August 1982, one of the largest unsecured creditors, American Hoechst Corporation, which had previously agreed to convert its debt to preferred stock, declined to accept preferred stock. Polytherm was unable to fill the ensuing $154,000 void in preferred stock subscription. As a result,

Polytherm prepared and filed an amended plan for reorganization on November 12, 1982.

Polytherm proposed to fund the amended plan with cash proceeds from a new issue of common stock and from an improved operating position and earnings derived from internal restructuring and from the new product Thermomass ™.

Polytherm's amended plan divides allowed claims and interests into six classes: 1) administrative expenses; 2) tax claims; 3) secured claims; 4) nonpriority unsecured claims of $100 or less; 5) other nonpriority unsecured claims; and 6) common stock. Under the amended plan, a holder of a nonpriority unsecured claim could agree to reduce the claim to $100 in order to obtain Class 4 treatment of the claim.

In article III, the amended plan prescribes the treatment of each class of claims. All Class 1 administrative expense claims allowed by the court are to be paid in full on confirmation from the proceeds of the new common stock issue. Class 2 tax claims are to be paid pursuant to § 1129(a)(9)(C), with minimum monthly payments equal to one thirty-sixth of the claim amount beginning in January 1983. The amended plan provides for full payment of interest arrearages on Class 3 secured claims within a three year period according to the following monthly payment schedule:

| When monthly sales are: | Payment the following month shall be: |
|---|---|
| Less than $100,000 | 0 |
| $100,000 to $150,000 | 50% of 1/36 of full amount |
| $150,000 to $175,000 | 100% of 1/36 of the full amount |
| $175,000 or more | 150% of 1/36 of the full amount. |

Under the amended plan, short-term notes are converted to loans at current commercial interest rates, with interest arrearages paid as prescribed in the above schedule. The amended plan proposes to pay only interest when monthly sales are less than $150,000 and to pay principal and interest only when monthly sales are $150,000 or more. The payments of secured claims, based on the previous month's sales, were

scheduled to begin in January 1983. Class 4 claims, nonpriority unsecured claims of $100 or less, were to be paid in full in January 1983 from the proceeds of the new common stock issue. The amended plan proposes to pay 10% of all other nonpriority unsecured claims, Class 5 claims, within three years, with monthly payments of Class 5 claims at a minimum of one thirty-sixth of the claim amount scheduled to begin in January 1983. Finally, the amended plan cancels Class 6 claims; holders of old common shares lose their rights relating to those shares.

Polytherm solicited ballots from creditors in Classes 3, 4, and 5.

Polytherm's two largest secured creditors, The First National Bank of the City of Superior and the Economic Development Administration, with claims as of December 2, 1983 of $455,559.15 and $246.521.01 respectively, both rejected the amended plan.[1] Because these two creditors had claims totalling more than 97% of the secured claims listed on Polytherm's financial statement, their rejection of the amended plan meant that this class of secured creditors rejected the amended plan.[2]

The record does not contain all the ballots solicited from Class 5 creditors. However, it does contain five such ballots rejecting the amended plan from Allied Carriers Exchange Inc. (which was owed $471.28), from American Hoechst Corp. (which was owed $144,070.75), from Myers, Baune, Dosen & Kuitunen (which was owed $3481.76), from Prater Industrial Products (which was owed $3890.00), and from Shoemaker & Haaland (which was owed $3989.31), for a total of $155,903.10 in Class 5 claims rejecting the amended plan. At the December 2, 1982 hearing, Polytherm indicated that five Class 5 creditors with claims totalling approximately $62,000 had accepted the amended plan and that four Class 5 creditors with claims totalling approximately $157,000 had rejected the amended plan. In Polytherm's statement of Financial Affairs for Debtor Engaged in Business filed with the bankruptcy court on February 3, 1982, nonpriority unsecured claims totalled $467,696.05 with $518.41 of that amount consisting of claims of $100 or less. According to the ballots in the record, only one creditor, Logeland Color Photography, accepted $100 as full payment of its claim of $300. Therefore, the February 1982 financial statement identified potential Class 5 claims of $466,877.64, less other Class 4 elections.[3] However, from February to December 1982, interest arrearages mounted. The February 1982 figures are not a reliable determinant of total Class 5 claims. The record lacks sufficient data upon which to determine whether Class 5 accepted or rejected the amended plan.[4]

1. At the hearing, debtor's counsel valued Economic Development Administration's claim at $264,521.01 but Economic Development Administration's ballot lists $246,521.01. In their brief, the First National Bank of the City of Superior and the Economic Development Administration state that, at the time of the confirmation hearing, the indebtedness held by them totaled $667,808.81. In the above finding, I am accepting the debts listed on the creditors' ballots.

2. At the December 2, 1982 hearing, debtor's counsel identified General Furniture Leasing Company as an accepting creditor with a secured claim of $2673.90. No ballot from this company appears in the record. On the Statement of Financial Affairs for Debtor Engaged in Business submitted to the bankruptcy court in February 1982, debtor identified two secured creditors other than First National Bank of the City of Superior and Economic Development Administration: National Bank of Commerce with a secured claim of $818 and Material Han-

dling Engineers, Division of Clark Equipment Credit Corporation, with a secured claim of $12,000.00.

Under 11 U.S.C. § 1126(c), acceptance of a plan by a class requires acceptances by the holders of two-thirds of the amount and number of claims in the class.

3. For a class to accept a plan, accepting creditors must hold two-thirds in amount and more than one-half in number of the allowed claims in the class. 11 U.S.C. § 1126(c). According to the figures in the record, the creditors rejecting the amended plan hold claims totalling $155,903.10, more than one-third of the amount of the potential Class 5 claims listed on the February 3, 1982 financial statement; hence, two-thirds of the amount of Class 5 claims could not accept the plan.

4. A formal vote is unnecessary from Class 6 claims because if the claims or interests of a class are cancelled the class is deemed to reject the plan. 11 U.S.C. § 1126(g).

Appellants First National Bank and Economic Development Administration elected treatment of their secured claims under 11 U.S.C. § 1111(b)(2).

In its operating history from September 1979 through November 1982, Polytherm's monthly sales exceeded $150,000 on two occasions and $100,000 on nine occasions.

During the bankruptcy court proceedings, Polytherm disclosed payments made to its attorneys for the bankruptcy action, and the identities of the proposed officers of the reorganized corporation, including those who had previously served as officers of Polytherm. Under the amended plan, all the officers and directors of Polytherm will serve in their previous capacities in the reorganized corporation. Polytherm failed to disclose the proposed compensation of these former officers reemployed in the reorganized corporation.

At the time it filed the Chapter 11 petition, Polytherm held exclusive licensing rights to manufacture and sell domestically and world-wide an insulated concrete sandwich wall building system known as Thermomass ™. Under the original licensing agreements, Polytherm agreed to pay 3% royalties on minimum sales of $3,000,000 the first year and $6,000,000 each subsequent year.

On March 26, 1982, these licensing agreements were replaced by two post-petition contracts, one between Polytherm and Robert T. Long, the inventor of Thermomass ™, and the other between Polytherm and Long and Robert A. Weinhardt, joint owners of a related invention. Under the new agreements, Polytherm relinquished foreign rights in return for lower sales guarantees for the domestic market. Also, Polytherm agreed that the same 3% royalty would be paid under the new agreements on minimum sales of $500,000 the first year ending June 5, 1982, $1,500,000 the second year, $3,000,000 the third year, and $5,000,000 each subsequent year. The same parties entered into addendum agreements on July 1, 1982, which extended the June 5, 1982 minimum royalty payment of $12,000 until September 5, 1982 and provid-

ed for automatic termination in the event of nonpayment. On September 5, 1982, Polytherm did not pay the royalties in cash but rather offset certain amounts allegedly owed by appellant Long to Polytherm. A dispute between Long and the Polytherm has ensued. Long filed an application in bankruptcy court for relief from stay to litigate his dispute with Polytherm. The bankruptcy court denied this application. Subsequently, Long filed objections to the amended plan. Also filing objections was Edward J. Klouda d/b/a Plastic Specialties, Ltd., the company with the exclusive right to manufacture the connecting rods used in the inventions. (Plastic Specialties, Ltd. is listed as one of Polytherm's ten largest creditors.)

On January 24, 1983, Polytherm filed a complaint with the bankruptcy court, seeking injunctive relief against defendants Robert T. Long and Thermomass ™ Technology, Inc., an Iowa corporation owned by Long. Polytherm sought to restrain defendants from continuing their alleged violation of exclusive licensing agreements and their interference with Polytherm's contractual rights. Polytherm contended that the feasibility of the amended plan confirmed by the bankruptcy court's December 22, 1982 order depends on Polytherm's continued ability to make, use, and sell the invention known as Thermomass ™ and other related products under two exclusive licensing agreements. On January 26, 1983, the bankruptcy judge transferred this adversary proceeding to the district court pursuant to the Emergency Rule Regarding Bankruptcy Cases and Proceedings.

On February 18, 1983, another judge of this court granted plaintiff's motion for preliminary injunction restraining defendants Long and Thermomass ™ Technology, Inc. from making, using, and selling the products and processes referred to in the two exclusive licensing agreements. In an order dated May 11, 1983, the district judge held the defendants in contempt of court for their willful violation of the preliminary injunction order, finding that the defendants communicated false information de-

signed to mislead prospective customers of Polytherm with regard to Polytherm's rights to the invention and to discourage negotiations for marketing agreements.

Subsequently, Polytherm filed a motion for summary judgment against Thermomass ™ Technology which has been denied. Polytherm did not file a summary judgment motion against Long personally because he had filed a Chapter 11 petition for bankruptcy in Cedar Rapids, Iowa and an automatic stay barred further action against him. The preliminary injunction continues pending the outcome of this appeal.

On December 22, 1982, the bankruptcy judge issued an order confirming the amended plan submitted to Polytherm. In separate orders, the bankruptcy court denied appellant Long's application for relief from stay and dismissed the appellant First National Bank's application to dismiss the petition or the proceedings. On July 30, 1982, Polytherm's attorney applied for an allowance for attorney's fees and expenses in the amount of $6582.33 for services related to the bankruptcy proceeding. The bankruptcy court allowed the fees and expenses in an order issued December 22, 1982.

On December 30, 1982, the Economic Development Administration filed a notice of appeal from the bankruptcy court's order of confirmation. The other appellants joined in this appeal.

## OPINION

### I. General Confirmation Requirements

In this bankruptcy action, Polytherm has elected to reorganize the corporation under Chapter 11 of the Bankruptcy Code rather than to liquidate under Chapter 7. Pursuant to that election, Polytherm had to submit a plan of reorganization. After Polytherm's original plan failed, Polytherm submitted the amended plan which forms the subject of this appeal.

In a reorganization plan, creditors with valid, allowed claims are divided into classes according to the nature of their individual claims. *See* 11 U.S.C. §§ 1122 and 1123(a)(1)–(4). A reorganization plan must specify the treatment of each class of claims and accord all the claims of a particular class the same treatment unless the claimholder agrees to less favorable treatment. 11 U.S.C. § 1123(a)(2)–(4).

The statutory provisions relating to reorganizations divide classes of claims into those that are impaired under the reorganization plan and those that are not. Whether a class is impaired is determined by applying the tests prescribed in § 1124, which are designed to identify the classes of claims that are impaired; that is, materially and adversely altered by the plan. Only impaired classes have a right to vote to accept or reject a reorganization plan. *See* 11 U.S.C. § 1126.

A bankruptcy court can confirm a plan that has the voluntary acceptance of all creditors, including "deemed" acceptances by unimpaired classes of creditors, provided the plan meets the eleven conditions precedent set forth in 11 U.S.C. § 1129(a). Those conditions are:

1) the plan must comply with Chapter 11, § 1129(a)(1);

2) the plan proponent must comply with Chapter 11, § 1129(a)(2);

3) the plan must be proposed in good faith and by legal means, § 1129(a)(3);

4) the plan proponent must disclose any payments made for services related to the bankruptcy proceedings, § 1129(a)(4);

5) the plan proponent must disclose proposed officers of the reorganized corporation, including the identities and compensation of any insiders, and must show that the officers' service is consistent with creditors' and equity security holders' interests and with public policy, § 1129(a)(5);

6) if a regulatory commission has jurisdiction, it must approve proposed rate changes, § 1129(a)(6);

7) each claimholder rejecting the plan must receive as much as it would receive under liquidation with exceptions for secured creditors electing for treatment of their claims under § 1111, § 1129(a)(7);

8) each class must either accept the plan or be unimpaired under the plan, § 1129(a)(8);

9) the treatment of tax claims, administrative expenses, and certain other specified claims must comport with the statutory specifications, § 1129(a)(9);

10) at least one class must accept the plan determined without counting insiders' votes; § 1129(a)(10); and

11) it must not be likely that confirmation of the plan will be followed by unforeseen liquidation or further reorganization, § 1129(a)(11).

If the reorganization plan meets all the requirements set forth in § 1129(a) except for § 1129(a)(8), the bankruptcy court may still confirm the plan under the cramdown provisions in § 1129(b), that is, provisions which permit confirmation over objection. The cramdown provisions require a determination that adequate protection is afforded the dissenting impaired classes under the reorganization plan. 11 U.S.C. § 1129(b). In this case, I will first review the amended plan to determine if it meets the § 1129(a) requirements. Only if the amended plan passes muster under these conditions precedent excluding § 1129(a)(8) will I apply the § 1129(b) cramdown provisions.

The bankruptcy court found and the appellants do not dispute that Polytherm conformed with the statutory provisions in Chapter 11 applicable to plan proponents, 11 U.S.C. § 1129(a)(2); that Polytherm disclosed payments made for services related to the bankruptcy action, 11 U.S.C. § 1129(a)(4); and that Polytherm disclosed the identities of proposed officers, including insiders who would be reemployed by the reorganized debtor. 11 U.S.C. § 1129(a)(5).

The requirements of section 1129(a)(6) have no application to the instant case because no regulatory commission has jurisdiction over the debtor's business.

Section 1129(a)(5)(B) requires disclosure of proposed compensation for officers in the reorganized corporation who served as officers of the bankrupt corporation. The record does not contain the proposed compensation of insiders in the reorganized corporation, though the amended plan adequately discloses their identities. Since section 1129(a)(5)(B) requires disclosure of proposed compensation, Polytherm is in noncompliance in this respect.

Section 1129(a)(1) requires that a reorganization plan comply with statutory provisions in Chapter 11. Appellants Long and Klouda contend that the amended plan does not comply with 11 U.S.C. § 1123(a)(2) which requires that reorganization plans specify any class of claims that is not impaired under the plan. Polytherm's position seems to be that because the plan specifies the treatment of impaired classes, it is not necessary for the plan to specify which classes are unimpaired. This position is not consistent with the statute. Although the amended plan delineates the treatment accorded each class under the plan, it does not specify which classes are unimpaired under the plan. Therefore, it fails to comply with § 1123(a)(2) and thus with § 1129(a)(1).

Appellants Long and Klouda also assert that Polytherm proposed the reorganization plan in bad faith in violation of the requirement in 11 U.S.C. § 1129(a)(3). All the appellants contend that the services of the proposed officers would be contrary to the interests of creditors and public policy because of the alleged poor management of the present officers of the debtor corporation. 11 U.S.C. § 1129(a)(5)(A). Although continued service by prior management may be inconsistent with the interests of creditors, equity security holders, and public policy if it directly or indirectly perpetuates incompetence, lack of discretion, inexperience, or affiliations with groups inimical to the best interests of the debtor, 5 Collier on Bankruptcy, ¶ 1129.02, at 1129–18 (15th ed. 1983), the record is insufficient to permit an evaluation of the appellants' allegations of bad faith and inadequacy of current management. On remand, the bankruptcy court should evaluate the validity of the appellants' allegations in this regard, after the parties have developed a factual record sufficient for an informed evaluation.

Other provisions of § 1129 establish standards for treating claims in a reorganization plan and for the workability of the plan in general. Priority claims must receive statutorily specified treatment. Administrative expenses must be paid in cash on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A) and 11 U.S.C. § 507(a)(1). Priority tax claims must be paid within six years from the date of assessment of the claim and the present value of deferred cash payments for those claims must equal the amount of the claim. 11 U.S.C. § 1129(a)(9)(C). The amended plan provides for full payment of administrative expenses in cash upon confirmation. Under the amended plan, priority unsecured tax claims as described in 11 U.S.C. § 507(a)(6) will be paid monthly with minimum payments of one thirty-sixth of the claim amount. The statement of Polytherm's liabilities lists the first quarter of 1981 as the earliest date existing tax debts were incurred. Presumably, the date of assessment followed. A three-year payment period commencing January 1983, would have resulted in extinguishment of Class 2 tax claims within six years from the date of assessment.

Also under § 1129, the plan must accord dissenting holders of claims at least as much as would be received under liquidation unless, in the case of a class of secured claims electing treatment of their claims under § 1111 as secured claims to the extent the claims are allowed, each holder will receive or retain under the plan security equal to the holder's present security interest. 11 U.S.C. § 1129(a)(7). In the amended plan, Polytherm estimates its asset liquidation value as $435,000. Although this sum has not been proven conclusively, neither has it been disputed, and it is grossly insufficient to cover the debtor's secured debts. To the extent they receive any payments or property under the amended plan, the Class 4 and 5 unsecured claimholders and the Class 6 holders of common stock would receive more than they would receive if Polytherm were liquidated under Chapter 7. The Class 3 secured creditors would retain the security to which their § 1111(b)(2) election applies. Therefore, the amended plan appears to comply with 11 U.S.C. § 1129(a)(7).

Plan proponents are required to transmit adequate information to holders of claims and interests to allow a hypothetical reasonable investor to make an informed judgment about the plan. 11 U.S.C. § 1125. The statute provides that this information is to be submitted in the form of a disclosure statement; however, the requirement has been held to be satisfied where the information appears elsewhere in the record. *In re Landau Boat Co.*, 13 B.R. 788 (Bkrtcy.W.D.Mo.1981). Although Polytherm submitted financial data throughout the bankruptcy proceedings, it did not revise its original disclosure statement satisfactorily when it submitted the amended plan. There is not sufficient information in the present record to permit a *de novo* determination of the reorganized corporation's feasibility, of present value analyses of proposed payments to creditors, or of voting results.[5] It is questionable whether Polytherm complied with the Chapter 11 requirement of transmitting adequate information for the making of intelligent judgments of the viability of the plan.

■■■■ In its confirmation of the amended plan, the bankruptcy court explicitly found the plan to be feasible and fair and

---

5. In order to confirm a reorganization plan under the cramdown provisions, the court must find that the plan is fair and equitable with respect to each rejecting, impaired class of creditors. 11 U.S.C. § 1129(b)(1). A fair and equitable determination regarding a secured class rejecting the plan entails certain lien requirements and a determination that the present value of deferred cash payments totals the allowed amount of the claims. 11 U.S.C. § 1129(b)(2)(A)). Because the amended plan failed to provide the interest rate to be paid on the converted secured debt and a guaranteed payout period, a present value analysis of the plan's proposed payment of secured claims is impossible. Even if there were no errors in the bankruptcy court's determination that the requirements of § 1129(a) were satisfied, I would remand the case to the bankruptcy court for the requisite cramdown analysis under § 1129(b)(2)(A).

equitable, without specifying the grounds for the finding. A court may approve a Chapter 11 plan only if the plan is feasible. As defined in the Bankruptcy Code, feasibility requires that confirmation of the plan is not likely to be followed by liquidation or further financial reorganization of the debtor. 11 U.S.C. § 1129(a)(11). Feasibility has been defined further in bankruptcy proceedings to require examination of the adequacy of the capital structure; the business's earning power; economic conditions; management's ability; the probability of the present management's continuation; and any other factors related to the successful performance of the plan. *In re Landmark at Plaza Park, Ltd.*, 7 B.R. 653 (Bkrtcy.D.N.J.1980); 5 *Collier on Bankruptcy*, ¶ 1129.02, at 1129–34 to –35 (15th ed. 1983). As I have noted, the bankruptcy record does not permit a finding on this point.

## II. Statutory Construction of 11 U.S.C. § 1129(a)(10)

One final § 1129(a) requirement has yet to be discussed. Section 1129(a)(10) prescribes as a condition precedent to confirmation: "At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class." Interpretation problems arise with regard to this section when it is considered along with other provisions of Chapter 11. Section 1126(f), which provides that an unimpaired class is deemed to accept the plan, would seem to allow the deemed acceptance of an unimpaired class to suffice for the purpose of complying with § 1129(a)(10). In contrast, § 1129(a)(8) distinguishes between a class that has accepted the plan and one that is unimpaired in its requirement that each class either accept the plan or be unimpaired under the plan. If the deemed acceptance of an unimpaired class satisfies the requirement prescribed in § 1129(a)(10), then the language in § 1129(a)(8) is surplusage. *In re Economy Cast Stone Co.*, 16 Bankr. 647 (Bkrtcy.E.D.Va.1981). On the other hand, if § 1129(a)(10) requires the affirmative acceptance of an impaired class,

then the deemed acceptance language of § 1126(f) conflicts with § 1129(a)(10).

To date, no district court or court of appeals has ruled on this question. Although several bankruptcy courts have addressed the issue, for the most part, they have done so in a conclusory fashion.

### A. Deemed Acceptance

Three different arguments can be made for the proposition that a deemed, or implied, acceptance will satisfy 11 U.S.C. § 1129(a)(10). First, absent the contradictory import of 11 U.S.C. § 1129(a)(8), it is arguable that the plain meaning of the statutory provisions supports such a construction: an accepting class includes a class that is deemed by the statute to accept the plan. In fact, one bankruptcy court has reasoned that, if Congress had intended that 11 U.S.C. § 1129(a)(10) require the affirmative acceptance of an impaired class, it would have inserted language to that effect. *In re Bel Air Associates, Ltd.*, 4 B.R. 168 (Bkrtcy.W.D.Okl.1980).

Second, it is arguable that implied consent satisfies 11 U.S.C. § 1129(a)(10) because an unimpaired class would vote to accept the plan if permitted to do so. 5 *Collier on Bankruptcy*, ¶ 1129.02[10], at 1129–32 (15th ed. 1983). This argument breaks down in those cases in which a statutorily unimpaired class of creditors affirmatively rejects the plan. *See In re Gagel & Gagel*, 30 B.R. 627 (Bkrtcy.S.D.Ohio 1983); *In re Spirited, Inc.*, 23 B.R. 1004 (Bkrtcy.E.D.Pa.1982); *In re Landau Boat Co.*, 13 B.R. 788 (Bkrtcy.W.D.Mo.1981); *In re Marston Enterprises, Inc.*, 13 B.R. 514 (Bkrtcy.E.D.N.Y.1981).

Third, in one case, *In re Masnorth Corp.*, 28 B.R. 892 (Bkrtcy.N.D.Ga.1983), the bankruptcy court determined that a deemed acceptance satisfies 11 U.S.C. § 1129(a)(10) by analogy to a Chapter XII line of cases, in which several bankruptcy courts, district courts, and courts of appeal have allowed Chapter XII plans to be confirmed without the consent of any class of creditors, *see, e.g., In re Perimeter Park Investment Asso-*

*ciates, Ltd.,* 697 F.2d 945 (11th Cir.1983) (deemed acceptance sufficed for confirmation of Chapter XII plan under 11 U.S.C. § 868 despite creditor's affirmative rejection of the plan because the plan provided adequate protection of the creditor's property). This reliance on a limited line of Chapter XII cases is unpersuasive for several reasons: the obvious fact that there are different statutory bases for the respective confirmation powers; the Chapter XII cases involved sole secured creditor plans in which the plan adequately protected the creditor's interests; and the Chapter XII line of cases contrasted with rigid acceptance requirements prior to the codification of the Bankruptcy Reform Act, yet Congress did not model the Chapter 11 confirmation and cramdown provisions after Chapter XII in this respect.

A major weakness in allowing a deemed acceptance to satisfy 11 U.S.C. § 1129(a)(10) is illustrated by the case *In re W.E. Parks Lumber Co., Inc.,* 19 B.R. 285 (Bkrtcy.W.D.La.1982). In that case, the bankruptcy court determined that 11 U.S.C. § 1129(a)(10) was satisfied by the deemed acceptances of two classes of priority debts, such as administrative claims and taxes paid according to 11 U.S.C. § 1129(a)(9)(C). This is an erroneous conclusion given the statute's treatment of priority claims and its characterization of those claims as not classified. 11 U.S.C. § 507(a)(1) & (6). If the deemed acceptances of these classes could satisfy 11 U.S.C. § 1129(a)(10), then that provision would be rendered a nullity. In virtually every case, the prescribed statutory treatment of administrative expenses and tax claims would place those claims in an unimpaired class without dissenting members.

### B. Purpose of 11 U.S.C. § 1126(f)

Several courts have treated as a rebuttable presumption the § 1126(f) provision deeming unimpaired classes to have accepted the plan. *In re Gagel & Gagel,* 30 B.R. 627; *In re Spirited, Inc.,* 23 B.R. 1004; *In re Landau Boat Co.,* 13 B.R. 788; *In re Marston Enterprises, Inc.,* 13 B.R. 514. In these cases, one or more creditors of an unimpaired class affirmatively rejected the plan. In part, the bankruptcy courts treated § 1126(f) as a rebuttable presumption for common sense reasons; in the words of one bankruptcy court, "To deem that a party has accepted a plan when the fact is that it has rejected the plan, is Alice in Wonderland reasoning." *In re Marston Enterprises, Inc.,* 13 B.R. at 520. The bankruptcy courts adopting the rebuttable presumption approach have also relied on the legislative history of the two deemed acceptance provisions. The Senate Judiciary Committee's construction of the corollary provision in the Senate bill supports the rebuttable presumption construction: "[This subsection] provides that no acceptances are required from any class whose claims or interests are unimpaired under the plan." S.Rep. No. 95–989, 95th Cong., 2d Sess. 123, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5909. In contrast, both the Senate and House Reports interpreted 11 U.S.C. § 1126(g) as a categorical rule providing that any class denied participation under the plan is conclusively deemed to have rejected the plan. S.Rep. No. 95–989, 95th Cong., 2d Sess. 123, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5909; H.R. Rep. No. 95–595, 95th Cong., 2d Sess. 411, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6367. Accordingly, deemed acceptance pursuant to § 1126(f) merely alleviates the need to solicit votes from unimpaired classes. However, affirmative rejection by a creditor of an unimpaired class can lead to rejection of the plan by the class if § 1126(c) voting requirements are met. *See In re Landau Boat Co.,* 13 B.R. at 788.

Although treating the deemed acceptance of an unimpaired class as a rebuttable presumption resolves the contradictory statutory language in the case of affirmative rejections by unimpaired classes, it does not resolve the instant case, where the sole unimpaired class is silent. However, this line of cases clarifies the legislative purpose behind § 1126(f), which is to alleviate the need to solicit votes from unimpaired classes.

## C. Affirmative Acceptance of Impaired Class Required

Several bankruptcy courts have decided that § 1129(a)(10) requires the affirmative acceptance of an impaired class. *In re Rolling Green Country Club,* 26 B.R. 729 (B.R. D.Minn.1982); *In re Dreske,* 25 B.R. 268 (Bkrtcy.E.D.Wis.1982) (dicta); *In re Pine Lake Village Apartment Co.,* 21 B.R. 478 (Bkrtcy.S.D.N.Y.1982); *In re Pine Lake Village Apartment Co.,* 19 B.R. 819 (Bkrtcy.S. D.N.Y.1982); *In re Economy Cast Stone Co.,* 16 B.R. 647 (Bkrtcy.E.D.Va.1981); *In re Barrington Oaks General Partnership,* 15 B.R. 952 (Bkrtcy.D.Utah 1981); *In re Marston Enterprises, Inc.,* 13 B.R. 514 (dicta). This construction can be justified on a number of grounds: statutory construction, later technical amendments to the statute, legislative history, and policies underlying the bankruptcy reform that gave rise to the new statutory provisions.

Section 1129(a)(8) creates a distinction between unimpaired status and acceptance of a reorganization plan. If unimpaired status is synonomous with acceptance, the distinction is meaningless. *See In re Economy Cast Stone Co.,* 16 B.R. at 652. According to the legislative history, § 1129(a)(8) "permits confirmation of a plan as to a particular class without resort to the fair and equitable test [cramdown] if the class has accepted the plan or is unimpaired under the plan." Statement by the Hon. Dennis DeConcini, Chairman of the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, upon Introducing the Senate Amendment to the House Amendment to H.R. 8200, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6505, 6542. The protections for classes of creditors embodied in § 1129(b), the cramdown provision, apply only to impaired classes that have rejected the plan. Section 1129(a)(8) identifies those classes that cannot be subjected to cramdown: unimpaired classes and accepting impaired classes. Unimpaired classes affirmatively rejecting a reorganization plan do not qualify for cramdown protections, presumably because their interests are already adequately protected under the plan. It follows that those classes determined by their unimpaired status to receive adequate protection under the plan should not be able to jettison the interests of dissenting classes. Such a result might follow if unimpaired status were held to fulfill the requirement in § 1129(a)(10).

Proposed technical amendments to § 1129(a)(10) support a construction requiring an affirmative acceptance by an impaired class. *In re Rolling Green Country Club,* 26 B.R. 729; *In re Barrington Oaks General Partnership,* 15 B.R. 952; *In re Landau Boat Co.,* 13 B.R. 788; *In re Marston Enterprises, Inc.,* 13 B.R. 514. For example, the Technical Amendments to the Bankruptcy Reform Act of 1978 rewrite § 1129(a)(10) to state, in part, "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan [must accept] the plan...." The accompanying Senate report explains the purpose of the amendment: "[T]his amendment makes clear the intent of Section 1129(a)(10) that one 'real' class of creditors must vote for the plan of reorganization. A class that is deemed to have accepted the plan because it is unimpaired or acceptance of a small class of claims permitted to be created for administrative convenience will not satisfy this requirement." S.Rep. No. 96–305, 96th Cong., 1st Sess. 15 (1979), *reprinted in In re Barrington Oaks General Partnership,* 15 B.R. at 970 n. 40.

The legislative history characterized § 1129(a)(10) as requiring that "at least one class must accept the plan." S.Rep. No. 95–989, 95th Cong., 2d Sess. 128, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5914. Although one bankruptcy court relied on this language to support its interpretation that § 1129(a)(10) requires the affirmative acceptance of an impaired class, *see In re Marston Enterprises, Inc.,* 13 B.R. at 519 & n. 7, the legislative history of § 1129(a)(10) is not particularly informative. However, it is significant, especially in conjunction with the discussion that follows, that § 1126(f) found its way into the prepassage bills only after the inclusion of § 1129(a)(10). *See In re Barrington Oaks General Partnership,* 15 B.R. at 970.

At the hearings on the proposed bankruptcy reform bills, representatives of the real estate lending industry objected to what they perceived as a possible effect of the cramdown provisions previously in effect under Chapter XII: in a depressed real estate market, a cash payment equal to the amount of a lien would prevent the creditor from recovering the full debt in the event of improved real estate conditions. Nevertheless, the creditor would belong to an unimpaired class and would thus be deemed to accept the plan. *See In re Pine Gate Associates,* 2 Bankr.Ct.Dec. (CRR) 1478 (Bankr.N.D.Ga.1976). The real estate investment spokesperson at the hearings raised this objection and proposed an amendment that eventually became § 1129(a)(10):

> Finally, it appears that under section 1130(c)(1)(B)(iii) [of the Senate bill] whatever protection that might exist in terms of requiring cash payment under section 1124 or section 1130(a) [of the Senate bill] is abrogated by permitting confirmation over the objection of any class member or, for that matter, any class, as long as they receive "property" of a value equal to the allowed amount of their claims. The "property" could be anything—notes, stock, bonds or the like. Indeed, it appears that if the debtor is solvent it need not obtain any votes in favor of the plan since all of its creditors could, in one fashion or another, be covered under section 1124, section 1130(a)(8) [of the Sentate bill], or section 1230(c). This section should be amended to be consistent with the rest of S. 2266 and in particular confirmation should not be permitted in situations where no class of affected creditors has voted for the plan.... We suggest the following: ... Add a new subparagraph ... to section 1130(a) [1129(a)] which would read: '(2) At least

one class of claims has accepted the plan, such determination to be made without including any claims held by insiders for purposes of number or amount.'

Statement of Edward J. Kulik, Senior Vice President, Real Estate Division, Massachusetts Mutual Life Insurance Co., accompanied by Robert E. O'Malley, Attorney, Covington & Burling, on behalf of The Independent Bankers Ass'n of America, The Mortgage Bankers Ass'n of America, The National Ass'n of Mutual Savings Banks, the National Ass'n of Real Estate Investment Trust, and the U.S. League of Savings Ass'ns, Hearings on S. 2266 and H.R. 8200 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 95th Cong., 1st Sess. 721 (1977).

The term, "affected creditor," is reminiscent of the statutory structure that preceded the 1978 Bankruptcy Reform Act. Under the previous statute, a creditor was deemed to be "affected" by a plan if its interests would be materially and adversely affected under the plan. S.Rep. No. 95–989, 95th Cong., 2d Sess. 120, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5906. Section 1124 embodies the concept of impairment that evolved from the affected creditor characterization but specifically delineates criteria for determining whether a class of creditors falls within that category. *Id.;* H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 408, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6364. Therefore, the real estate investment interest groups sought legislation requiring affirmative acceptance by an impaired class before a plan could be confirmed.[6]

According to the bankruptcy court in *In re Barrington Oaks General Partnership,* 15 B.R. at 969–70, the legislative intent is mirrored by the language of the real estate

---

**6.** The rationale of the real estate investment interests would support the rebuttable presumption theory more so than the affirmative acceptance theory, the proposed § 1129(a)(10) language aside. Their objection initially focused on unimpaired creditors that receive property of low value because of a depressed market and that are then unable to reap the

benefits of subsequent increased property values. These creditors might reject the plan even though they might fall in an unimpaired class. However, § 1129(a)(10) would be consistent with the real estate investment interests if it required some indicia of impaired creditor support before a plan could be confirmed.

interest groups' statement and proposal. *Accord In re Rolling Green County Club*, 26 B.R. at 734. The bankruptcy court strengthened its conclusion by reference to the absence of any deemed acceptance provision at the time § 1129(a)(10) was added to the bills. *Barrington Oaks*, 15 B.R. at 970.

The interest groups' proposal was intended, in part, to protect real estate investments by limited partnerships composed of wealthy individuals seeking tax shelters. Statement of Edward J. Kulik, at 710. Typically, in those situations, the loan documents limited the lender to resort to the asset for satisfaction of the debt rather than to the partners personally. The real estate investment groups contended that the policy favoring reorganization in bankruptcy would not apply in this situation. *Id.* In fact, a petition in bankruptcy may be filed to prevent recapture of accelerated depreciation as ordinary income in the year of foreclosure. *Barrington Oaks*, 15 B.R. at 969 n. 39. It appears that the real estate investment groups' proposed amendment [§ 1129(a)(10)] was intended to prevent courts from forcing reorganization of these debtors in the absence of affirmative creditor support. Resort to the broader policies behind bankruptcy reform in its current statutory structure may place the interest groups' proposal in perspective.

The Bankruptcy Reform Act of 1978 consolidated into Chapter 11 the provisions for reorganization that occupied four chapters of the old act. Reorganization provides an alternative to a debtor's liquidation, allowing the debtor's business to continue as a going concern in the face of financial setbacks that have prevented the debtor from meeting its financial obligations to creditors. Report to the President on the Bankruptcy Act and Its Administration in the Courts of the United States, S.Doc. No. 65, 72d Cong., 1st Sess. 39 (1931), *reprinted in* H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 242–44, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6201–03. The authors of the Bankruptcy Reform Act of 1978 sought both to simplify the procedures for reorganizing a debtor by lessening the court's role in arranging a satisfactory reorganization scheme and to facilitate negotiation and consensus between the debtor and creditors in devising a reorganization plan.

Ideally, a reorganization plan will be the product of debtor-creditor cooperation and will serve both sides' interests. However, if the debtor and creditors fail to agree on the reorganization plan as signified by dissension of creditor classes, the cramdown device may permit confirmation of the plan if the plan adequately protects the dissenting classes according to 11 U.S.C. § 1129(b). Section 1129(a)(10) creates an impediment to resort to the cramdown authority and, as such, it can frustrate a debtor's interest in adopting a given plan. However, if no class of creditors agrees to the plan, it would not be equitable to impose acceptance of the plan upon the creditors by enforcing the debtor's interest in confirmation of the plan through the cramdown authority. The point is, if no impaired class accepts the plan, the debtor has failed to negotiate effectively with its creditors in devising a reorganization plan. I find nothing in the Bankruptcy Reform Act to indicate that Congress intended that the bankruptcy courts could saddle creditors with a stake in a reorganized corporation under a plan that had received no acceptances from impaired classes of creditors.

Such a result would be inconsistent with the policy of protecting creditors that is inherent in the Bankruptcy Reform Act of 1978. The interpretation of § 1129(a)(10) is supported by two commentators. *See, e.g.,* P. Murphy, Creditors' Rights in Bankruptcy, Section 16.11, at 16–20 (1980): "The only conceivable purpose of Section 1129(a)(10) is to require some indicia of creditor support for the debtor's schemes, and such support can hardly be found based on a 'deemed to have accepted' vote from an unimpaired class which has no real stake in the confirmation process." *See also* Brisbee, Business Reorganization Practice Under the Bankruptcy Reform Act of 1978, 28 Emory L.J. 709, 748–49 (1979):

A better rule, however, would be that at least one impaired class must affirmatively accept the plan in order for the plan to be confirmed. The draftsmen of the Code, and Congress in enacting it, took great pains to protect creditors by eliminating the rulings of such cases as [those allowing confirmation despite rejection by the sole secured creditor class under Chapter 12]. In view of these protective measures, it is unreasonable to assume that Congress intended that a plan could be confirmed when no class of creditors actually accepts it.

It has been argued that if § 1129(a)(10) is construed to require the affirmative acceptance of an impaired class, the proponent of a plan may alter a plan so as to impair a class slightly in order to solicit its acceptance of the plan. Such a response by a debtor would constitute the wasteful solicitation of acceptances that § 1126(f) sought to prevent. Certainly, acceptance of a plan by a slightly impaired class would contribute very little to an indicia of creditor support for the plan. However, the problems associated with allowing a deemed acceptance to satisfy § 1129(a)(10) outweigh the risk of this type of debtor manipulation. In general, construing § 1129(a)(10) to require an affirmative acceptance by an impaired class will result in a more meaningful test of creditor support for the reorganization plan and will facilitate the negotiating process envisioned by Chapter 11.

■ I hold that § 1129(a)(10) requires the affirmative acceptance of at least one impaired class of creditors to be determined without the votes of any insiders in the class.[7]

### III. Impairment

The remaining conditions precedent to plan confirmation without resort to cramdown concern impairment and voting. A reorganization plan must classify the vari-

ous kinds of claims against and interests in the debtor's property and must identify those classes of claims that are not impaired. 11 U.S.C. § 1123(a)(1) and (2). Section 1124 provides a statutory definition of impairment. A class of claims is impaired under a plan unless one of the following standards is met: (1) the plan leaves the claimholder's legal, equitable, and contractual rights unaltered (11 U.S.C. § 1124(1)); (2) the plan cures defaults and reinstates the original terms of an obligation when maturity was brought on or accelerated by the default (11 U.S.C. § 1124(2)) (in essence, this section allows the proponent to negate an acceleration clause without the other party's approval, Klee, All You Ever Wanted to Know About The Cram Down Under the New Bankruptcy Code, 53 Am.Bankr.L.J. 133, 139 (1979)); and (3) the plan provides for payment of the claim in cash on the effective date of the plan (11 U.S.C. § 1124(3)). However, a holder of a claim may agree to less favorable treatment of its claim without being characterized as impaired. 11 U.S.C. § 1123(a)(4).

A finding of impairment or nonimpairment determines a creditor's right to vote on the reorganization plan. A class of creditors that is unimpaired is "deemed" to have accepted the plan, relieving the debtor of the need to solicit votes from the creditors in the class. 11 U.S.C. § 1126(f). An impaired creditor has the right to accept or reject a reorganization plan. 11 U.S.C. § 1126(a). A bankruptcy court may confirm a reorganization plan even where impaired classes reject the plan but only upon a finding that the plan adequately protects the dissenting class or classes according to the cramdown requirements of 11 U.S.C. § 1129(b). In order for a plan to be confirmed without resort to cramdown provisions, each class of creditors must either affirmatively accept the plan or be unimpaired under the plan. 11 U.S.C.

---

**7.** I express no opinion on the question whether a plan consisting entirely of unimpaired classes can be confirmed. To my knowledge, this situation has not arisen. However, if acceptances of impaired classes are not possible without

counting insiders' votes, the plan should not be confirmed. *See In re Featherworks Corp.,* 25 B.R. 634 (Bkrtcy.E.D.N.Y.1982) (one class rejected the plan and two consisted of insiders).

§ 1129(a)(8). This section provides little guidance for determining whether each class is impaired under the plan and, if so, whether the class has accepted or rejected the plan. Section 1123(a) requires a reorganization plan to specify any class of claims that is unimpaired under the plan and to specify the treatment of the remaining classes that are impaired. As I have found, Polytherm's amended plan divides allowed claims and interests into six classes: 1) administrative expenses; 2) tax claims; 3) secured claims; 4) nonpriority unsecured claims of $100 or less; 5) other nonpriority unsecured claims; and 6) common stock.

■ With regard to Polytherm's amended plan classification, it is relatively easy to determine whether Classes 1, 2, 4, 5, and 6 are impaired. By their nature, the Class 1 administrative expenses and Class 2 tax claims are accorded preferential treatment. Claims such as these which are specified in 11 U.S.C. § 507(a)(1) and (6) are not classified and acceptance is not required because 11 U.S.C. § 1129(a)(9)(A) specifies the least favorable payment terms allowable under a plan. A majority of such a class cannot bind a minority to less favorable payment terms. 5 *Collier on Bankruptcy* ¶ 1129.-02[9], at 1129–28 (15th ed. 1983). Accordingly, it has been argued that the only essential confirmation requirement with respect to such priority classes is compliance with 11 U.S.C. § 1129(a)(9). The argument is logical. If administrative expenses and tax claims were viewed as classes of claims, they would always be unimpaired and deemed to accept the plan because the statutorily prescribed treatment comports with unimpaired status. 11 U.S.C. § 1124(3); *see In re W.E. Parks Lumber Co., Inc.*, 19 B.R. 285 (Bkrtcy.W.D.La.1982).

Class 4, consisting of nonpriority unsecured claims of $100 or less and those claims reduced to $100 by the creditor's agreement, constitutes an unimpaired class.[8] The claims of $100 or less are classified as unimpaired claims paid in cash on the effective date of the plan. 11 U.S.C. § 1124(3). The amended plan provides for full cash payment of Class 4 claims in January 1983. The payment date falls within one week of the bankruptcy court's confirmation of the plan and therefore it suffices for purposes of the exception. According to 11 U.S.C. § 1123(a)(4), the holder of a claim may agree to less favorable treatment than that afforded the claim by its terms. Section 1124 identifies this election as an exception to the impairment characterization.

Appropriately, the amended plan identifies both Classes 5 and 6 as impaired classes.[9] This is accurate, because under the amended plan Polytherm proposes to pay only ten percent of Class 5 claims and relinquishes all Class 6 rights. Accordingly, the plan alters the legal, contractual, and equitable rights of Class 5 and 6 claims. 11 U.S.C. § 1124(1).

■ Determining whether Class 3 constitutes an impaired class is more complicated. The amended plan does not characterize Class 3 as impaired although it does specify the treatment of Class 3 claims. *See* 11 U.S.C. § 1123(a)(2) and (3). In its brief, Polytherm contends that by specifying the treatment of Class 3 claims, the amended plan acknowledges that Class 3 is an impaired class. This concession on Polytherm's part is consistent with the statutory definition of impairment. The amended plan alters the legal, equitable, and contractual rights attached to Class 3 claims in at least two ways. *See* 11 U.S.C. § 1124(1). First, the amended plan converts short-term notes to loans at commercial interest rates subject to the payment schedule for Class 3 claims. Interest arrearages will be repaid over a three-year period while principal payments depend on sales levels. This pay-

---

8. Section 1122(b) allows the plan to create a class of unsecured claims that is less than or reduced to a reasonable amount necessary for administrative convenience.

9. Article VII of the amended plan provides that unsecured creditors are impaired under the plan as are Class 6 stockholders. By implication, the plan's statement of impairment applies only to Class 5 unsecured claims, because the Class 4 unsecured claims of $100 or less are to be paid in full and thus are unimpaired.

back arrangement alters the contractual terms of the notes. Second, the amended plan subjects all Class 3 claims to the prescribed payment schedule, which alters the contractual terms of each claim. Section 1124(2) does not change the conclusion that Class 3 is impaired under the amended plan because the amended plan does more than negate the effect of an acceleration clause. It alters the entire terms of the original agreements which, according to § 1124(2)(D), constitutes impairment.

■ The impairment determination can be viewed as a statutorily prescribed measurement for determining when the protections established in 11 U.S.C. § 1129(b) should be accorded a class of creditors. *See In re Barrington Oaks General Partnership,* 15 B.R. 952, 963–64 (Bkrtcy.D.Utah 1981). In this case, interest arrearages are to be paid in full over a three year period; yet monthly payments are conditioned on monthly sales levels achieved infrequently in the old corporation's history. Principal will be paid on a monthly basis only if sales exceed a level achieved by the old corporation only on rare occasions. This is no guarantee of full payment of principal.

■ Because the payment of Class 3 claims is contingent upon sales levels, the Class 3 creditors should be afforded the protection prescribed in § 1129(b)(2)(A)(i)(I-I), and the bankruptcy court should undertake a present value analysis to determine whether the present value of the deferred cash payments equals the amount of the claim. In the alternative, the bankruptcy court should scrutinize the amended plan's treatment of Class 3 creditors under

§ 1129(b)(2)(A)(iii), which establishes that creditors may not be deprived of receiving payments for an unreasonably long period of time. *In re Hollanger,* 15 B.R. 35, 45 (Bkrtcy.W.D.La.1981).

Class 3 is impaired under the plan and has rejected the plan. Class 4 is deemed to have accepted the plan because it is an unimpaired class. The record does not reveal whether Class 5 has accepted or rejected the plan. Class 6 is conclusively presumed to have rejected the plan.

As the tally shows, Polytherm's plan does not meet the requirement set forth in 11 U.S.C. § 1129(a)(8). Classes 3 and 5 are impaired under the plan and they have not accepted the plan.

■ In this case, no impaired class has affirmatively accepted the debtor's reorganization plan. Therefore, this case fails to meet the requirement of § 1129(a)(10) that at least one impaired class of creditors must affirmatively accept the plan. Accordingly, I conclude that the bankruptcy court was in error in confirming the reorganization plan.

### ORDER

IT IS ORDERED that the bankruptcy court's decision is REVERSED and the case is REMANDED for further proceedings.[10]

---

**10.** On remand, the bankruptcy court should address appellant Long's motion for relief from stay in a more thorough fashion. The contract underlying the dispute is crucial to the vitality of the reorganized corporation. A determination that confirmation of the plan is unlikely to be followed by liquidation or further reorganization as required by § 1129(a)(11) cannot be made while the contract dispute is pending.